Case No. 12,481.

SCHRIEFER et al. v. WOOD.

[5 Blatchf. 215.] [1]

Circuit Court, S. D. New York. May 10, 1864.

INTERNAL REVENUE—MANUFACTURERS OF BONE—BONE BLACK—CHARCOAL.

1. Animal charcoal or bone black, produced by the process of burning bone, or exposing it to the action of fire, in the same manner that wood is exposed to the action of fire, to produce vegetable charcoal, and bone dust, produced by the process of pulverizing or grinding bones or

―――――

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

pieces of bone, whereby they are reduced to small fragments of no regular or uniform shape or size, are "manufactures of bone," within the description of an internal revenue act taxing "manufactures of bone."
[Followed in Peters v. Robertson, 20 Fed. 819; Cited in Harrison v. Merritt, 23 Fed. 654; Erhardt v. Hahn, 5 C. C. A. 99, 55 Fed. 275.]
[Cited in Attorney General v. Belle Isle Ice Co., 59 Mich. 164, 26 N. W. 313; Carlin v. Western Assur. Co., 57 Md. 526.]

2. The exemption of "charcoal," by such an act, from taxation, does not exempt animal charcoal or bone black, produced in the manner above stated.

[3. Cited in Equitable Life Ins. Co. v. Gleason, 56 Iowa, 49, 8 N. W. 791, to the point that, in the interpretation of statutes, words of common use are to be taken in their natural, plain, and ordinary signification.]

This was an action [by Richard B. Schriefer and others] against the defendant [Alfred M. Wood], as a collector of internal revenue, to recover back taxes paid to him, under protest, on an article called animal charcoal or bone black, and on an article called bone dust. The bone black was produced by the plaintiffs by the process of burning bone, or exposing it to the action of fire, in the same manner that wood is exposed to the action of fire to produce vegetable charcoal. The bone dust was produced by the process of pulverizing or grinding bones or pieces of bone, whereby they were reduced to small fragments of no regular or uniform shape or size.

Charles A. Nichols, for plaintiffs.

E. Delafield Smith, Dist. Atty., for defendant.

HALL, District Judge. It is insisted by the defendant, that animal charcoal and bone dust are manufactures of bone, and, as such, are chargeable with taxes. The plaintiffs insist that they are not manufactures of bone; and that, if animal charcoal is a manufacture of bone, it is, nevertheless, exempt from taxation, because charcoal is specially exempted from taxation, by the internal revenue act [12 Stat. 713].

In regard to the first question, it is argued, in behalf of the plaintiffs, that there is an obvious distinction between a mere natural process and a manufacture; that the latter involves the idea of a series of natural processes, and of the results of the art and ingenuity of man; that this distinction is recognized by all the lexicographers, in their definition of the word "manufacture," and, also, in the popular use of the terms "manufacture" and "manufacturer"; and that we do not call a wood-sawer, or a miller, who merely grinds corn into meal, without bolting it, a manufacturer. It is true, that we do not ordinarily call a wood-sawer a manufacturer, and that we do not usually term a miller, who simply grinds corn in his mill, a manufacturer; but this is probably because the exact character of their business is more clearly expressed by the terms "wood-sawer" and "miller," than by the more indefinite terms

"manufacturer of wood," and "manufacturer of corn meal," and because their operations are usually quite limited. We do not ordinarily apply the term "manufacturer" to one whose operations are as limited as those of a wood-sawer; but, when great quantities of saleable articles are produced, even by a single operation of a very simple machine, we frequently, if not ordinarily, speak of the operation as a manufacture. When large quantities of kindling wood are made by splitting blocks of wood by machinery adapted to that special purpose, we do not hesitate to speak of it as a manufacture of kindling wood; and an establishment where very large quantities of bone dust are produced by grinding by machinery, would, by many, in ordinary conversation, be termed a manufactory of bone dust. We speak of the manufacture of salt, when it is produced by the simple operation of boiling, or by solar evaporation; and, when any article of manufacture, having a distinct name in the trade and commerce of the country, is produced by machinery, or by a chemical process, from any material or materials having a different commercial name from the article produced, we may generally speak of the operation by which it is produced as a manufacture.

If we look to the definitions of the term manufacture, both as a noun and as a verb, given in our standard dictionaries, it will be seen, that the definitions are broad enough to include the manufacture of bone dust and bone black, when produced in the modes adopted by the plaintiffs. Among the definitions given by Webster, are: (1) "The operation of reducing raw materials of any kind into a form suitable for use, by hand, by art, or by machinery;" (2) "Anything made from raw materials by the hand, by art, or by machinery;" (3) "To make or fabricate from raw materials by the hand, by art, or by machinery, and work into forms convenient for use;" (4) "To work raw materials into suitable forms for use." Worcester has the same definitions, in substance; and similar definitions are found in other dictionaries. "Bone dust" and "bone black," with the proper definitions, are found in both Webster and Worcester, and in other modern dictionaries, and they are known in trade by these distinctive appellations.

Whether we look to the popular use of the term "manufacture," or to its definition as given by our best lexicographers, as the proper guide to the intention of the act of congress, it is clear that the plaintiffs were properly charged with taxes on the bone dust and on the bone black, as manufactures of bone.

The exception of "charcoal," on which the plaintiffs rely, to excuse them from the payment of taxes on the bone black or animal charcoal, is also some evidence that the production of charcoal from wood, and of other articles of merchandize, by a single and simple process, was deemed a manufacture; for, if charcoal would not have been chargeable with duty if no such exception had been made,

there was no necessity for such an exception. Tinkham v. Tapscott, 17 N. Y. 141.

The exception of "charcoal," in the internal revenue act, is not an exception of bone black. In defining charcoal, both Webster and Worcester refer to only that produced from wood; and animal charcoal is not referred to in their definitions of charcoal, nor is animal charcoal found in the lists of words defined. In commercial contracts and in legal phraseology, the simple term "charcoal," without the word "animal" before it, would not be held to include bone black or animal charcoal; and, if we look to the ordinary and popular use of the term "charcoal," it clearly would not include bone black. This popular use of the word should doubtless be most influential in determining the interpretation of the language of the statute exception, for, in the interpretation or construction of statutes, words of common use are to be taken in their natural, plain, obvious and ordinary signification and import. 1 Kent, Comm. 462; Martin v. Hunter's Lessee, 1 Wheat. [14 U. S.] 304, 326; Rex v. Inhabitants of Turvey, 2 Barn. & Ald. 522. As the statute stands, I think it entirely clear that bone black is not exempted from taxes because of the exemption of charcoal.

On the whole case, the defendant is entitled to judgment on the verdict.