JOSEPH CARLIN, use of THE SECOND NATIONAL BANK OF CUMBERLAND *vs.* THE WESTERN ASSURANCE COMPANY OF TORONTO, CANADA.

*Construction of a Fire Insurance Policy—Evidence—The words, Manufacturing Establishment—Lard Oil and Candles—Petroleum for Oiling Machinery.*

A fire insurance policy issued to the appellant by the appellee, described the property insured " as his steam flour mill fixtures or machinery, viz., middling purifier, belting and machinery to run the same, [and other specified articles,] all contained in a two story frame, shingle-roof building with stone basement, situate well detached in Frostburg, Md." The policy contained a provision that, "if it [the premises mentioned] be a manufacturing establishment running in whole or in part over, or extra time, or running at night; * * or if in said premises there be kept gunpowder, fire-works, nitro-glycerine, phosphorus, saltpetre, nitrate of soda, petroleum, naphtha, gasoline, benzine or benzine varnish, or there be kept or used therein camphene, spirit-gas, or any burning fluid, or any chemical oils, without written permission in this policy, (excepting the use of refined coal oil, kerosene, or other carbon oil for lights, if the same is drawn and the lamps filled by daylight,) then, and in every such case, this policy shall become void." It was also provided, that the appellee's agent had no authority to waive, modify or strike from the policy any of its printed or written conditions or restrictions, except by a distinct specific agreement clearly expressed, and endorsed on the policy. Outside and standing against the building described as that containing the machinery insured, was a small structure in which were placed the engine and boiler, which supplied the power for running the mill. This structure was but one story, of the height of the stone basement of the other, and having a shed roof. The engine and boiler were not included in the machinery covered by the policy, nor any articles contained in the engine house. About midnight of the 13th June, 1878, both buildings with all their contents were destroyed by fire. The cause of this fire, which originated in the main building, on the side opposite from the

Carlin, use 2nd Nat. Bk. of Cumberland *vs.* West. Assur. Co. of Toronto.

engine room, was unknown. It appeared that the mill in which was the machinery, was sometimes run at night, between the dates of issuing the policy and the fire, but not the night on which the fire occurred; that when the mill was run at night, the appellant used for lights, lard oil and candles, the appellant filling his lamps at night, as occasion required, when the mill was run at night; that the appellant used petroleum, a natural lubricating oil, as was shown, for the purpose of oiling the machinery of the mill, which he bought in quantites not exceeding one barrel at a time, and that this oil was kept in such barrel in the engine room. In an action by the appellant to recover on the policy, it was HELD:

1st. That it being a condition of the policy that no parol evidence should be allowed to modify its conditions or restrictions, no evidence of the agent as to verbal understandings was admissible, but that the instrument should speak for itself.

2nd. That the mill was a "manufacturing establishment," within the meaning of the policy.

3rd. That none of the lights used in the mill came within the specification of articles forbidden for that purpose by the policy, and that, consequently, it was immaterial whether the lamps were filled by daylight or not.

4th. That the barrel of petroleum was not kept on the premises described in the policy; and that had it appeared from the policy, that the engine room was included in the "premises," the keeping of the petroleum therein, if shown that it was used for the purpose of oiling the machinery, would not vitiate the policy.

APPEAL from the Circuit Court for Allegany County, on removal from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exceptions.*—At the trial, after the evidence stated in the opinion was in, and after the exception to the proffer of evidence stated in the opinion, the plaintiff offered four prayers: the second is stated in the opinion; the first and fourth need not be set forth; the third is as follows:

That if the jury believe from the evidence, that the defendant issued the policy in proof, and the property

therein mentioned was destroyed by fire, the notice and preliminary proof given, as set forth in first prayer; and if they further find, that the said Joseph Carlin had at times, in the engine room, adjoining said mill, a quantity of lubricating oil, known as petroleum, not exceeding at any one time one barrel, for the purpose of greasing the machinery in said mill; and if they further find, that said engine room was built of stone wall all round said room, with a shed roof on said wall, and that said engine room was not in said building in which the property insured by said policy was located, then there is nothing in said policy to preclude the plaintiff from recovering, in consequence alone of said lubricating oil being kept in said engine room, if they find said engine room to be situated as hereinbefore stated.

The defendant offered five prayers; the first not being excepted to by plaintiff, is not before this Court; the fifth need not be stated; the others are as follows:

2. That if the jury find there was a barrel of oil, called lubricating oil, kept or used in the premises where the insured property was situated, at any time between the date of the policy and the fire, and that said oil was petroleum, or any chemical oil, except refined coal, kerosene or other carbon oil for lights, then the plaintiff cannot recover.

3. That if the jury find that the plaintiff, from time to time, between the date of the policy and the fire, kept and used in the premises containing the property insured, and burning fluid for lights, other than refined coal, kerosene or other carbon oils, and drew the same and filled the lamps therewith at night, then their verdict must be for the defendant.

4. That if the jury find that the plaintiff, Carlin, at any time between the date of the policy and the fire, kept or used, in the premises containing the property insured, any burning fluid except refined coal, kerosene or other

Carlin, use 2nd Nat. Bk. of Cumberland *vs.* West. Assur. Co. of Toronto.

carbon oil for lights, then their verdict must be for the defendant.

The Court, (PEARRE and MOTTER, J.,) granted the first and fourth, and rejected the second and third prayers of the plaintiff, and granted the five prayers of the defendant ; to the rejection of the second and third prayers of the plaintiff, and granting of the second, third, fourth and fifth prayers of the defendant, the plaintiff excepted. The verdict and judgment being for the defendant, the plaintiff appealed.

The cause was argued before BARTOL, C. J., ROBINSON, RITCHIE and MAGRUDER, J.

*George Hawkins Williams,* for the appellant.

The written part of a policy controls all repugnant conditions. *Wood on Fire Insurance,* 139, *note,*—149.

A steam engine and its machinery being insured, lubricating oil was " essential "—and to be permitted—and any repugnant printed condition void. If there for any other purpose, it might be a different question, but it was an absolute essential to what was covered on the written part of the policy.

Machinery cannot be run without " lubricating;" to say by the policy that *it* should not be used, would be by the policy to shut up the mill, or if the mill were run, *lubricating* being indispensable, then the policy never attached from its issue ; and as all lubrication is done in some sense by a " burning fluid "—any running of the machinery with any kind of oil, would, according to the defendant, vitiate the policy—reduce it to a nullity and enable the defendant to pocket the premium without any risk.

That the law is otherwise, see *Wood on Fire Ins.,* 135 ; *Archer vs. Merchants' & Manuf. Ins. Co.,* 43 *Mo.,* 434 ; *Ins. Co. vs. McLaughlin,* 53 *Penn.,* 485 ; *Harper vs. Insurance*

Carlin, use 2nd Nat. Bk. of Cumberland *vs.* West. Assur. Co. of Toronto.

*Co.*, 22 *N. Y.*, 441; *Harper vs. Insurance Co.*, 17 *N. Y.*, 194; *Hall, et al. vs. Insurance Co. N. Amer.*, 58 *N. Y.*, 292; *Merchants' & Manuf. Insurance Co. vs. Wash. Mut. Insurance Co.*, 1 *Handy*, (*Ohio*,) 181; *Brown vs. The Kings Co. Fire Insurance Co.*, 31 *How.*, (*N. Y.*,) 508; *Mayor, N. Y., &c. vs. Hamilton Fire Insurance Co.*, 10 *Bos.*, (*N. Y.*,) 538; *Grant vs. Howard Insusance Co.*, 5 *Hill*, (*N. Y.*,) 14; *Collins vs. Insurance Co.*, 79 *N. C.*, 279; *Wall vs. Howard Insurance Co.*, 14 *Barb.*, (*N. Y.*,) 383.

Lard oil and candles were not prohibited by the conditions—being refined coal, kerosene or any carbon oil, neither in the accepted sense, nor as used in the policy. The prohibition of the policy is evidently against the use or keeping of certain explosives; also petroleum in its various forms, and any fluid of ready igniting power—*i. e.*, "burning fluid." Certain forms of petroleum are expressly excepted from this prohibition. Lard oil and candles are not excepted, because not prohibited.

But however all this may be, it is the condition of the building and the uses to which it was put at the time of the loss that determines whether prohibited conditions have been broken or not, so as to vitiate protection when the property is in a state of innocency. *Wood on Fire Ins.*, 375; *M. F. I. Co. vs. Coatesville Shoe Factory*, 80 *Penn. St.*, 407; *Joyce vs. Maine Insurance Co.*, 45 *Me.*, 168; *Willis vs. Germania & Hanover Insurance Co.*, 79 *N. C.*, 285.

A marine policy in all cases re-attaches after deviation, when ship returns uninjured to her true course. *Phillips on Insurance, secs.* 734, 989; *Wilkins vs. Insurance Co.*, 30 *Ohio* (*St.*,) 319; *Palmer vs. Warren Ins. Co.*, 1 *Story*, 360.

Appellant insists, however, as to the occasional running of the mill at night, that at the time Metzgar, agent of defendant insured it, he knew that he was insuring what was occasionally so used; he took the premium, therefore,

with full knowledge, with no warning, and would have endorsed the permission had he been asked.

This amounts to waiver. *Wood on Fire Ins.*, 672; *Aurora Fire Insurance Co. vs. Kranich*, 36 *Mich.*, 289; *Peoples' Insurance Co. vs. Spencer*, 53 *Penn. St.*, 353.

*Wm. H. Brune, Jr.*, and *John M. Carter*, for the appellee.

The appellant's first exception proceeds upon the theory that the condition against running at night, was waived by the action, or rather inaction, of the company's agent at Frostburg. It will be observed that there was no proffer to show that the insured, when treating for the insurance, stated any purpose of running at night or any desire for permission in the policy to do so. The contract was made, and the policy accepted containing the express prohibition; and the insured must be presumed, from his acceptance, to have full knowledge of the condition. *Baltimore Fire Ins. Co. vs. Loney*, 20 *Md.*, 36; *Beck vs. The Hibernia Insurance Co.*, 44 *Md.*, 106.

The proffer is that the agent knew at the time the insurance was effected that the mill had sometimes been run at night, and that he knew it was sometimes run after night after the policy was issued; that the agent had power to write upon the policy a waiver of the condition, and would have done so had he thought it necessary, and the insured had requested him to do so. Certainly the knowledge of the agent at the time of issuing the policy that the mill had sometimes been run at night previously could not be tortured into a consent that it might be so run thereafter, in the absence of any mention by the insured of his purpose, or wish to do so. *Dewees vs. Insurance Company*, 35 *N. J.*, 366.

In order to estop the insurer the act claimed as a waiver must be shown to have been done with full knowledge of the forfeiture, and one which necessarily operates as a

recognition of the validity of the policy.    *Wood on Fire Insurance,* 684 ; *State Mutual Fire Ins. Co. vs. Arthur,* 30 *Penn.,* 315 ; *Diehl vs. Adams Co. Mutual Fire Ins. Co.,* 58 *Penn.,* 444 ; *Viele vs. Insurance Company,* 26 *Iowa,* 9 ; *Walsh vs. Hartford Fire Ins. Co.,* 73 *N. Y.,* 5 ; *Ben Franklin Ins. Co. vs. Gillet,* 54 *Md.,* 212.

The appellant's steam flour mill was undoubtedly a manufacturing establishment ; and his steam flour mill machinery insured was a part—a necessary part— of that manufacturing establishment, and covered and protected by the condition against running that establishment at night.    *Bigler vs. N. Y. Central Fire Ins. Co.,* 20 *Barbour,* 635 ; *Peoria Marine and Fire Ins. Co. vs. Lewis,* 18 *Ill.,* 553 ; *May on Fire Insurance,* 520 ; *Wood on Fire Insurance,* 124.

What covers the whole covers every part.    The violation of the condition as to part avoids the contract as fully as if the violation extended to the whole.    *Assum vs. Assoc. Fire Ins. Co.,* 5 *Md.,* 165 ; *Bowman vs. Franklin Fire Ins. Co.,* 40 *Md.,* 620.

The fifth prayer of the appellee gave the appellant the full benefit of the most liberal construction on this point, leaving it to the jury to find from the evidence, whether the steam flour mill in which the insured machinery was contained, was a manufacturing establishment or not, and declaring that if they so found, and also found that it was run at night, between the dates of the policy and the fire, there could be no recovery.    *Annapolis & E. R. R. vs. Balto. Fire Ins. Co.,* 32 *Md.,* 37 ; *Maryland Fire Ins. Co. vs. Gusdorf,* 43 *Md.,* 507 ; *Wood on Fire Insurance,* 453–4.

The policy forbids keeping petroleum on the premises. The appellant himself proved that he kept a barrel of lubricating oil in the said engine-room, and the appellee proved that this oil was petroleum.    To escape this inevitable destruction of his claim, the appellant asks the Court to declare that the said engine-room is no part of

Carlin, use 2nd Nat. Bk. of Cumberland *vs.* West. Assur. Co. of Toronto.

the premises. The mill was a steam flour mill. The engine-room had for one of its walls the wall of the main building of the mill. The power which ran the mill— without which it could not be a steam mill—was located in this engine-room, and communicated by shafts through the wall with the machinery in the mill. Anything without which another cannot exist, must, of necessity, be a part, and an essential part of that other. *Chase vs. Hamilton Ins. Co.*, 20 *N. Y.*, 52; *May on Fire Insurance*, 520, and cases cited.

The prohibition in the policy against the keeping of petroleum in the premises is explicit, and the violation is made a flat bar to the plaintiff's recovery. *Birmingham Fire Ins. Co. vs. Kroeger*, 83 *Penn.*, 64; *Wood on Fire Insurance, p.* 663, *sec.* 400; *McFarland vs. Peabody Ins. Co.*, 6 *W. Va.*, 426; *Whitmarsh vs. Charter Oak Fire Ins. Co.*, 2 *Allen*, 581; *Cerf vs. Home Ins. Co.*, 44 *Cal.*, 320.

It is wholly immaterial whether the breach of the condition was material to the risk or not, and whether the fire resulted from it or not. *Beck vs. Hibernia Ins. Co.*, 44 *Md.*, 105–6; *Howell vs. Balto. Equitable Society*, 16 *Md.*, 386; *Matson vs. Farm Building Ins. Co.*, 74 *N. Y.*, 310.

None of the prohibited oils are to be kept or used without written permission in the policy; and with the oils which are permitted it is made essential that they should be drawn and the lamps filled by daylight. This condition, like the others alleged to have been broken, constitutes a warranty, the breach of which avoids the policy whether the risk was affected or not. *Franklin Fire Ins. Co. vs. Chicago Ice Co.*, 36 *Md.*, 119–20; *Mead vs. N. W. Insurance Co.*, 7 *N. Y.*, 530; *Westfall vs. Hudson River Fire Ins. Co.*, 12 *N. Y.*, 289.

RITCHIE, J., delivered the opinion of the Court.

The policy of assurance, upon which the appellant, as plaintiff below, seeks to recover, was issued to him by J.

S. Metzgar, agent of the company.    It describes the property of plaintiff insured as "his steam flour mill, fixtures or machinery, viz., middling purifier, belting and machinery to run the same, [and other specified articles,] all contained in a two story frame, shingle roof building with stone basement, situate well detached in Frostburg, Md."    There are sundry provisions in the policy, the violation of which works a forfeiture of the insurance.

The particular conditions for the alleged violation or non-observance of which the defendant claims to be discharged from liability are, first, those relating to precautions against fire, which are as follows: "If it, [the premises mentioned,] be a manufacturing establishment, running in whole or in part over, or extra time, or running at night; . * * * or if in said premises there be kept gunpowder, fire-works, nitro-glycerine, phosphorus, saltpetre, nitrate of soda, petroleum, naphtha, gasoline, benzine or benzine varnish, or there be kept or used therein camphene, spirit gas or any burning fluid, or any chemical oils, without written permission in this policy, (excepting the use of refined coal oil, kerosene, or other carbon oil for lights, if the same is drawn, and the lamps filled by daylight,) then, and in every such case, this policy shall become void:" secondly, those defining the authority of the company's agent to vary the contract of insurance, and fixing the mode in which a waiver of any of the terms or prohibitions of the policy may be affected; which are contained respectively in the sixth and seventh clauses of the instrument, viz.,

"6. It is further understood and made part of this contract, that the agent of this company has no authority to waive, modify or strike from this policy any of its printed conditions, nor is his assent to an increase of risk, binding on the company, until the same is indorsed in writing on the policy, and the increased premium paid ; nor in case this policy shall become void by reason of the viola-

tion of any of the conditions thereof, has the agent power to revive the same, and that a new policy intended to replace any policy so made void, shall be of no effect until its actual issue and delivery thereof to the assured, any contract by parol or understanding with the agent to the contrary notwithstanding.

"7. The use of general terms, or anything less than a distinct specific agreement, clearly expressed, and indorsed on this policy. shall not be construed as a waiver of any printed or written condition or restriction therein."

The proof shows, that, outside and standing against the building described as that containing the machinery insured, was a small structure in which were placed the engine and boiler which supplied the power for running the mill. This structure was but one story, of the height of the stone basement of the other, and having a shed roof. The engine and boiler were not included in the machinery covered by the policy, nor any articles contained in the engine house.

About midnight of the 13th June, 1878, both buildings, with all their contents, were destroyed by fire. The cause of this fire, which originated in the main building, on the side opposite from the engine-room, is unknown.

The evidence further shows, that the mill, in which the machinery was located was sometimes run at night between the dates of issuing the policy and the fire, but not the night on which the fire took place; that when the mill was run at night the plaintiff used for lights lard oil and candles, the oil so used being of the kind used by the miners in the Cumberland coal region, the plaintiff filling his lamps at night as occasion required, when the mill was run at night; that the plaintiff used petroleum, which from the testimony is a natural lubricating oil, for the purpose of oiling the machinery of the mill, which he bought in quantities not exceeding one barrel at a time, and that said oil was kept in such barrel in said engine-room.

The plaintiff offered to prove by J. S. Metzgar, the agent of the defendant, who procured the insurance and delivered the policy, that he was aware when the policy was issued that the mill had been previously sometimes run at night, and also was aware that it was sometimes run after night after the insurance was effected; that he had authority to endorse on the policy the right of the plaintiff to run said mill at night, and would have done so if he had thought it necessary under the policy, and said Carlin had requested him so to do.

This offer of proof having been denied, its rejection is the subject of plaintiff's first exception. In this ruling we fully concur with the Court below. The policy itself, in the clause quoted above, makes it part of the contract that no modification of the printed conditions by the agent shall be binding upon the company until the same is endorsed in writing on the policy, and the increased premium paid; nor, in case the policy becomes void from violation of its conditions, shall the agent have power to revive it by any parol agreement with him. A further objection to the offer is, that the understanding of the agent of what he thought was necessary or not under the policy could not be received to vary its written terms. The instrument must speak for itself.

The right of the plaintiff to run his mill at night depends upon whether the mill was a "manufacturing establishment;" and, unless what the policy meant in using this term was the subsequent conversion of the premises into a manufacturing establishment other than or of a different character from what it then was,—and the appellant seems to have made no such point,—this was simply a question of fact to be left to the jury, and it was properly submitted in defendant's fifth prayer. But what is to be deemed a manufacturing establishment; or, in other words, what is the signification of the verb *to manufacture*, is for the Court to define. The counsel for

appellant contended that making flour from wheat, reasoning from the etymology of the word, and the nature of the process, is not manufacturing. But whilst, from its derivation, the primary meaning of the word " manufacture " is making with the hand, this definition is too narrow for its present use. Its meaning has expanded as workmanship and art have advanced ; so that now nearly all artificial products of human industry, nearly all such materials as have acquired changed conditions or new and specific combinations, whether from the direct action of the human hand, from chemical processes devised and directed by human skill, or by the employment of machinery, which after all is but a higher form of the simple implements with which the human hand fashioned its creations in ruder ages, are now commonly designated as " manufactured."

Burrill defines "to manufacture," "the process of making a thing by art," and cites, BUTLER, J., in 2 *H. Bl.*, 463, 471. Abbott gives its meaning as "whatever is made by human labor, either directly or through the instrumentality of machinery." The definition in Webster is, "To make or fabricate from raw materials by the hand, by art or machinery, and work into forms convenient for use." Worcester has in substance the same definition. A case directly applicable, is that of *Schriefer vs. Wood,* 5 *Blatch.,* 215, in which animal charcoal, produced by the process of burning bone, in the same manner that wood is exposed to the action of fire, to produce common charcoal, and bone-dust produced by pulverizing or grinding bones, are decided to be "manufactures of bone." The question here considered, was involved in that case, and the decision accords with the view we have expressed. We think, therefore, that plaintiff's flour mill, driven as it was by steam, and furnished with a middling purifier, bran-duster, belting and other machinery, was clearly a " manufacturing establishment."

Carlin, use 2nd Nat. Bk. of Cumberland *vs.* West. Assur. Co. of Toronto.

In this connection, we would observe, that plaintiff's second prayer was properly refused. The proposition of that prayer is, that the words "manufacturing establishment," are to be applied to the articles of machinery insured, and not to the building or premises in which they were contained. In our opinion, they obviously relate to the latter.

The granting of defendant's first prayer not having been excepted to, although referred to in the argument, is not open to our consideration. The remaining three prayers of the defendant, in connection with plaintiff's second and third prayers, present the grounds upon which this appeal is decided. They relate to the nature of the substances used by the plaintiff for illuminating purposes, and to the presence of a certain quantity of petroleum in the engine room of the mill.

In our view, none of the lights used in the mill, come within the specification of articles forbidden for that purpose by the policy; and consequently, it is immaterial whether the lamps were filled by daylight or not. On this point, the prohibition is in these words: "or there be kept or used therein camphene, spirit-gas or any burning fluid or any chemical oils, without written permission in this policy, (except the use of refined coal oil, kerosene or other carbon oil for lights, if the same is drawn, and the lamps filled by daylight,) then, and in every such case, this policy shall become void." The defendant's construction of this condition is, that the use of any kind of material for illumination, but those enumerated in the qualifying or excepting clause recited, is a violation of the policy. We do not so understand it. After forbidding the keeping on the premises of gunpowder, nitro-glycerine, petroleum and other similar articles of an explosive or highly combustible character, the prohibition proceeds, as stated above, to enumerate other articles, used for illuminating purposes, equally known to be especially dangerous,

because highly inflammable and explosive, following, however, with the reservation, that certain other kindred articles, also recognized as dangerous, but of a somewhat lower degree of inflammability, may be used, provided the filling of the lamps is done in the day-time. This is evidently a mere relaxation of the stringent precaution, or a privilege for the employment of certain hazardous substances, conceded on the score of convenience or practical necessity, and not intended as a restriction to their use alone to the exclusion of such others as are manifestly safer. The danger sought to be averted, is of setting fire to the premises; and the use of articles free from the dangerous properties of those permitted, and therefore less objectionable, is not within the reason of the prohibition. The filling of the lamps by daylight, is required evidently to guard against the ignition to which the substances specified are liable, from their volatile nature, on contact with or nearness to the light necessary to be used after nightfall, in drawing them and pouring them into the lamp. To this category, plainly belongs "burning fluid," one of the substances named; and which is not from the context, or the reason involved, as well as from its nature as popularly and commercially known, to be taken to embrace any and all fluids that may be made to burn, without reference to the appliances necessary to cause them to give light or their inherent liability to take fire. In no proper sense, therefore, do we consider that the use of candles, or such oil as the plaintiff filled his lamps with, are within the contemplation of the clause in question. As this conclusion is at variance with the propositions presented in defendant's prayers, there was error in granting them.

The defendant's second prayer must also be pronounced errroneous, because, as we construe the term—" the premises where the insured property was situated," the barrel containing the petroleum used for lubricating purposes, was

Carlin, use 2nd Nat. Bk. of Cumberland vs. West. Assur. Co. of Toronto.

not kept therein. The defendant assumes, that the small house or engine-room, in which the barrel was placed, is included within the meaning of the words "said premises," employed in the policy. Although, in a general sense, the engine-room was undoubtedly part of the milling establishment, it is not embraced in the description of the property with reference to which the words "said premises" are used. The insurance was not effected upon the buildings at all, but upon certain portable machinery. In describing what machinery is the subject of the risk, reference is made to the building which contained it, merely for its more certain identification. This building, which was the larger one, is incidentally but accurately described for this purpose. No part of the description of this building is applicable to the dimensions or appearance of the engine-room. And the latter is of necessity excluded; because the object being only to describe the building in which the machinery insured was contained, and none of this machinery being in the engine-room, there was no reason why the engine-room should be described, but a very obvious one why it should not. The building, therefore, that was described antecedently to the use of the words "said premises," is the only one to which they can be taken to relate.

But, even had it appeared from the policy that the engine-room was included in the description of the premises, the keeping of the petroleum therein, under the circumstances shown, although it is among the list of articles forbidden to be kept, would not, in our opinion, have vitiated the policy, if evidence were introduced showing that it was the appropriate and customary article used in the plaintiff's trade for lubricating machinery, and that he had kept it on the premises for that purpose only, and in a reasonable and prudent manner and quantity. As the defendant knew when it issued the policy, that it was insuring machinery that was part of and essential to the

Carlin, use 2nd Nat. Bk. of Cumberland *vs.* West. Assur. Co. of Toronto.

equipment of defendant's steam flour mill, and that such a mill could not be operated except by machinery, it must be supposed to have contracted with reference to what was a necessary and ordinary incident to the running of such machinery. An indispensable requisite to machinery in motion is its lubrication; and the necessity for having at hand such material as is shown by the common experience of those in the business to be adapted to that purpose, must be presumed to have been contemplated by the contracting parties. If that material, in running a steam flour mill, is petroleum, it cannot be supposed that the prohibition against keeping petroleum extended to the necessary and proper use of it as a lubricating oil, but applied only to its being kept in the sense of storing it, or for commercial traffic, or, at least, in some way other than its use, in a careful manner for the purpose of lubrication. Where the contrary is not expressly made to appear, it is not to be presumed, that when an insurance is effected with reference to an established and current business, whose protection is really the object of the insurance, that such a narrow and stringent construction of the provisions of the policy was intended as will necessarily cause its serious embarrassment or suspension.

That this is the correct rule in construing policies of insurance such as was issued to the plaintiff, we consider well settled. Among the authorities in its support, we refer to the following cases as peculiarly applicable, because growing out of alleged forfeitures of insurance in connection with inflammable substances identical with those pertaining to this controversy : *Harper, et al. vs. The Albany Mutual Ins. Co.*, 17 *N. Y.*, 194; *Bryant vs. Poughkeepsie Mut. Ins. Co.*, *Ib.*, 200; *The Citizens' Ins. Co. vs. McLaughlin*, 53 *Penn.*, 485; *Williams vs. Fireman's Fund Ins. Co.*, 54 *N. Y.*, 569; See also *Whiteford's Case*, 31 *Md.*, 219.

It follows from the conclusions at which we have arrived, that not only should the second, third and fourth

prayers of the defendant have been rejected, but the third prayer of the plaintiff should have been granted; and that the judgment of the Circuit Court must be reversed and a new trial awarded.

(Decided 3rd February, 1882.)