## COUNTY COMMISSIONERS OF CARROLL COUNTY ET AL. *vs.* B. F. SHRIVER COMPANY.

*Exemption from Taxes—Manufacturing Industry—Canning Business—Resolution of County Commissioners.*

A company engaged in canning corn, beans, peas and succotash and employing for the purpose intricate and expensive machinery, is engaged in "manufacturing" within the meaning of Acts 1914, ch. 528, authorizing county commissioners by resolution to exempt from taxation the tools and machinery of those so engaged. p. 418

Acts 1914, ch. 528, giving county commissioners power, by resolution, to exempt from taxation tools and machinery used in manufacturing, gives no power to rescind such a resolution after its adoption. p. 419

*Decided July 22nd, 1924.*

Appeal from the Circuit Court for Carroll County (THOMAS, C. J., and MOSS, J.).

Action by the County Commissioners of Carroll County, Maryland, and others, against the B. F. Shriver Company. From a judgment for less than their claim, plaintiffs appeal. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, and BOND, JJ.

*William L. Seabrook* and *Guy W. Steele,* for the appellants.

*Alfred Jenkins Shriver,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case the appellants brought suit against the appellee to recover county taxes on tangible personal property in Carroll County belonging to the appellee.

The court, sitting as a jury, heard the case and rendered a verdict for the appellants, upon which a judgment was thereafter entered, for a sum much less than that claimed by the appellants. The reduction in the judgment was caused by the court's finding that a large amount of said property, consisting of engines, machinery, etc., was exempt from the payment of such taxes.

The appellants, being dissatisfied with the amount of judgment so entered, have appealed to this Court.

The appellee is a corporation which is now, and has been for a number of years, largely and extensively engaged in the canning of corn and vegetables in Westminster, New Windsor and Union Mills, Carroll County, Maryland.

The Legislature in 1914 passed an act (chapter 528), the titling of which is as follows:

"An Act to encourage the development of manufacturing industries in the State of Maryland by providing for exemption from taxation of the tools, machinery, manufacturing implements and engines of corporations, firms and individuals actually engaged in manufacturing, provided that such exemption shall be granted only when requested by the county commissioners of any county or by the Mayor and City Council of Baltimore, by amending sections 4, 162 and 164 of article 81 of the Code of Public General Laws of Maryland as codified in the Annotated Code of 1912."

The said Act of 1914 (chapter 528) amended section 164 of article 81 by adding thereto the following provision:

"The county commissioners of any county shall by resolution determine by a vote of its members whether there shall be in their respective county the exemption of the tools, machinery, manufacturing implements and engines of corporations, firms and individuals actually engaged in manufacturing, and duly certified to the State Tax Commissioner of Maryland; * * * and wherever no determination has been made and duly certified to the State Tax Commissioner, then and in that case the tools, machinery, manufacturing implements and engines of corporations, firms and individuals actually engaged in manufacturing shall be required to pay all taxes assessed against said property."

The County Commissioners of Carroll County, pursuant to the power conferred upon them by said Act of 1914, did on the 18th day of January, 1915, pass the following resolution:

"Resolved, that, acting in pursuance of ch. 528, sec. 164, of the Acts of 1914, all tools, machinery, manufacturing implements and engines of corporations, firms and individuals actually engaged in manufacturing shall be hereafter exempt from taxation in Carroll County, Maryland."

After the passage of the above resolution, a copy of which was sent to the State Tax Commission, the tools, machinery, engines and other implements of the appellee used in its plants were, in settlements made by it with the County Commissioners, involving the payment of county taxes, recognized and treated as property exempt from the payment thereof, and thereafter no such tax was paid thereon, nor was there any demand made upon the appellee for its payment until after the passage of the following resolution.

"Whereas, on the 18th day of January, A. D., 1915, the Board of County Commissioners of Carroll County, Maryland, passed and spread upon its minutes a resolution as follows:

" 'Resolved, that, acting in pursuance of ch. 528, sec. 164, of the Acts of 1914, all tools, machinery, manufac-

turing implements and engines of corporations, firms and individuals actually engaged in manufacturing shall be hereafter exempt from taxation in Carroll County, Maryland;

" 'Now, therefore, be it resolved this 6th day of December, A. D., 1920, that the above and aforegoing resolution passed by the Board of County Commissioners of Carroll County, Maryland, on the 18th day of January, A. D., 1915, be and the same is hereby rescinded, repealed and annulled, and that from and after this day and date all tools, machinery, manufacturing implements and engines of corporations, firms and individuals engaged in manufacturing shall be subject to taxation in Carroll County, Maryland, in the same manner and to the same extent as if the said resolution bearing date January 18th, 1915, had not been passed by said Board of County Commissioners.' "

The County Commissioners, who signed the above resolution purporting to rescind the resolution formerly passed by their predecessors in office, notified the State Tax Commission of its passage and thereafter the property which, by the resolution of January 18th, 1915, was exempt from the payment of county taxes, was with other property of the appellee charged with the payment of those taxes; and the appellee, when called upon to pay such taxes thereon, refused, and this suit was brought.

Two questions are presented by this appeal: 1st. Was the appellee actually engaged in manufacturing? 2nd. Did the appellants, the County Commissioners of Carroll County, have the power and authority to rescind the order passed by them on the 18th day of January, 1915, exempting from the payment of county taxes the tools, machinery, etc., of the appellee.

(1) In determining the first of these questions, we must not only consider what is done by the appellee, the means and methods by which it is done, and the extent of its operations, but we must also consider the purpose and object of the statute.

The appellee, at the time of the passage of the Act of 1914, and at the date of the resolution of January 18th, 1915, was engaged in canning corn, beans, peas and succotash, the latter being a combination of corn and beans. It had at such time three plants, one located in each of the following places, Westminster, New Windsor and Union Mills. The value of the tools, machinery, implements and engines used by it at that time in the three factories amounted to forty-nine thousand dollars, while in 1921 the value of such property then held by it was more than two hundred thousand dollars, and the plants in that time had been greatly enlarged and their capacity for production largely increased.

In the last named year it canned more than two hundred thousand cases of corn or more than four million eight hundred thousand cans, and in one year it paid for corn alone more than one and one-half millions of dollars, of which three-fourths was paid to the farmers, the balance representing the value of the corn raised upon their own farms. In September of 1923, it paid for labor in Carroll County twenty-five thousand dollars.

The corn, when brought to the factory in the husk, is weighed in the wagon. It is then unloaded by machinery into conveyors and these distribute it to husking machines, by which the husk is removed. The corn is then placed in conveyors and assorted. The damaged and immature ears are taken out and the corn washed. Thereafter it is cut from the cob by machinery and then placed into conveyors and run through a silking machine, by which all the silk and pieces of cob are removed. It is then run in vats and later put into filling machines where brine, consisting of sugar, water and salt, is added, and its temperature raised to one hundred and eighty or one hundred and ninety degrees. Afterwards it is put into cans which have been cleaned by machinery for sanitary purposes. The cans are then closed and sealed by machinery. It is then placed in retorts, where it is subjected to a heat of two hundred and fifty degrees for seventy or seventy-five minutes and, while

so subjected to that heat, it undergoes a chemical change and the bacteria in the corn are killed. The corn is then cooled and thereafter it is carried to the warehouse and stored in wooden cases, where it remains until the time of shipment, when it is labelled.

It is difficult to say in the abstract what is and what is not a manufacturing industry. What might be a manufacturing industry when defined or construed in connection with a statute exempting tools, machines, engines, etc., from taxation, might not be so held when considered in connection with a statute having a different object or purpose. As said in 26 *Cyc.* 524: "There is of course a multitude of cases in which particular industries and products have been held respectively to be or not to be manufacture, but it would be useless to cite these cases under the names of the industries or products there the subject of decision; * * * since the fact that a given thing or industry has been held to be manufacture under one set of circumstances is no assurance that it will be so held under another."

In *Carlin* v. *West Assurance Company*, 57 Md. 526, this Court was called upon to decide whether a steam flour mill was a "manufacturing establishment," as the term was used in a fire insurance policy. It there said,

"The primary meaning of the word 'manufacture' is making with the hand, this definition is too narrow for its present use. Its meaning has expanded as workmanship and art have advanced, so that now nearly all artificial products of human industry, nearly all such materials as have acquired changed conditions or new and specific combinations, whether from the direct action of the human hand, from chemical processes devised and directed by human skill, or by the employment of machinery, which, after all, is but a higher form of the simple implements with which the human hand fashioned its creations in ruder ages, are now designated as 'manufactured.' * * * A case directly applicable, is that of *Schriefer* v. *Wood,* 5 Blatch, 215, in which animal charcoal, produced by the process of burning bone in the same manner

that wood is exposed to the action of fire to produce common charcoal, and bone-dust produced by pulverizing or grinding bones, are decided to be 'manufactures of bone.' The question here considered was involved in that case, and the decision accords with the view we have expressed. We think, therefore, that plaintiff's flour mill, driven as it was, by steam, and furnished with a middling purifier, bran-duster, belting and other machinery, was clearly a 'manufacturing establishment.' "

The object and purpose of the statute, as shown by its titling, was to encourage the development of manufacturing industries in the State of Maryland by exempting the tools, machinery, etc., of those actually engaged in manufacturing from the payment of the aforesaid taxes, and the benefit which was expected to be derived therefrom was the bringing in of labor in large numbers and its employment in the community, accompanied by all the beneficial results that usually and naturally follow such employment, as well as all other benefits that result from the establishment of such industries. Therefore we cannot escape the conclusion, upon the reasoning of *Carlin v. West Assurance Company, supra,* that it was foreign to the intention of the Legislature that the industry here involved should not be regarded as a manufacturing industry within the meaning of that law, especially when we consider the condition of the corn, in the husk and on the cob, when received by the appellee, and what was thereafter done by the appellee, at great cost to it and with much benefit to others, through intricate and expensive machinery before placing the corn in cans, which cans thereafter became an essential part of the product, in that by their use only could the corn in its new and changed condition be preserved.

It may also be added to what we have said, that after the passage of the resolution on the 18th day of January, 1914, the State Tax Commission held the view we have expressed, that the appellee was a corporation engaged in manufacturing, and in the six succeeding years the tools, machinery, implements and engines of the appellee were not assessed or

charged against it in the payment of county taxes, and in this decision the appellants acquiesced.

(2) It is not, nor could it be successfully, contended that the Commissioners of Carroll County had any power or authority, independent of that conferred upon them by the Act of 1914, chapter 528, to exempt property from the payment of taxes.

The statute mentioned conferred upon them the right and power to determine whether its provisions should apply to Carroll County, that is, it was left to them to determine whether certain property named therein should be exempt from the payment of the county tax. If they failed to exercise the power so conferred upon them, the provisions of the act were not to apply to that county, but on the other hand if, in the exercise of such power, they determined to exempt such property from the payment of said tax and certified their action to the State Tax Commission, the statute thereafter became the law of that county, as much so as if it had been enacted without any reference or submission to the will of the said commissioners, and therefore, in the absence of any power lodged in them by the act to recall the action taken by them exempting such property from the payment of taxes, they were without authority to rescind the resolution of January 18th, 1915, which in effect was an attempt to repeal the act so far as it applied to Carroll County, and this could be done only by the Legislature of the State.

Authority was conferred upon the commissioners to determine whether the law should apply to Carroll County, but the power was not delegated to them to repeal the statute after it became effective in said county, if such power could have been delegated to them; and this view of the law is in accord with the decision in *Northern Trust Company* v. *Snyder*, 113 Wis. 516, in which it was held, quoting from the syllabus, which it seems correctly states what was decided:

"If a general law be enacted pertaining to county government, giving an option to county boards to severally put the same into effect in their respective counties, but giving no power to repeal their action and restore the former situation,

such boards possess the special power of adoption and no other. Having given effect to the law in a county, its board cannot abolish such effect."

See also *Board of Trustees* v. *Supervisors*, 99 Cal. 571; *Boody* v. *Watson*, 63 N. H. 320.

The action of the court in the ruling upon the prayers being consistent with the view we have expressed, and as we find no error in the court's ruling upon the other exception appearing in the record, we will affirm the judgment appealed from.

*Judgment affirmed, with costs to the appellee.*