## MAYOR AND CITY COUNCIL OF BALTIMORE
### *v.* STATE TAX COMMISSION et al.
[No. 41, April Term, 1931.]

*Decided July 20th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Joseph R. Walter* and *W. Wallace Rhynhart, Assistant City Solicitors,* with whom was *A. Walter Kraus, City Solicitor,* on the brief, for the appellant.

*William L. Marbury* and *William L. Rawls,* for the Union Shipbuilding Company, appellee.

SLOAN, J., delivered the opinion of the Court.

The question, and only question, involved in this appeal is whether the machinery, tools, and materials of the Union Shipbuilding Company, one of the appellees, are "used entirely or chiefly in connection with manufacturing" and as such, entitled to exemption "from taxation for all ordinary municipal purposes" under the provisions of section 10, ch. 82, of the Acts of 1918.

The Union Shipbuilding Company had applied to the Appeal Tax Court of Baltimore for an exemption from taxation for the year 1930 on machinery valued at $250,000 and raw material, $600,000, under the Act of 1918, chapter 82, and an order was passed deducting as exempt $82,730, representing the value of a plant manufacturing acetylene and oxygen gases used in connection with its operations, and declaring the balance of the items claimed were subject to taxation. From this order, an appeal was taken by the applicant, as to the property held taxable, to the State Tax Commission of Maryland, which reversed the order of the Appeal Tax Court. The City of Baltimore then appealed to the Baltimore City Court, which sustained the action of the State Tax Commission, holding that the Union Ship-

building Company should be "classed as a manufacturer" and entitled to the exemption on the property scheduled, except certain machinery and equipment scheduled at a value of $23,419.39, which the parties agreed was assessable, and it is from the order of the City Court that this appeal is taken by the City of Baltimore.

The Union Shipbuilding Company had been for many years engaged at Fairfield, Curtis Bay, in the City of Baltimore, on a large scale in the business of shipbuilding. After the World War, that line of business disappeared, leaving the company with a large plant on its hands. Since 1921, it has been engaged in the purchase and dismantling of steel vessels, and the transformation or cutting of the metal parts of such vessels into sizes suitable for use in the manufacture of steel and other metallic products. Practically all of the vessels so cut to pieces are bought from the government of the United States under agreements whereby they must be dismantled and every usable part rendered unfit for use as installed on the vessel so purchased. According to the statement of one of the company's witnesses read in evidence: "Upon arrival at our plant the vessels are placed alongside piers and stripped of all wood and miscellaneous equipment, after which they are cut into sections approximately twenty-four feet long by five feet wide, by use of acetylene torches, and the sections are then removed by locomotive cranes, placed in railroad cars, and transferred to shears, where they are cut into sections five feet long by eighteen inches wide, the prescribed open hearth large box size. Material so cut is then loaded by overhead magnetic cranes into cars and shipped to steel mill furnaces, where, in connection with a certain percentage of pig iron, it is converted into steel ingots, which in turn are rolled into various shapes." The conversion is not done by the company, but by its customers. "Non-ferrous material (brass, copper and bronze) is removed from vessels, transferred to shears, where it is cut into small pieces for melting into ingots." "The Union Shipbuilding Company is now engaged in the production of approximately 12,000 tons of heavy melting steel per month,

and it is employing from 600 to 650 men continuously, with a pay roll averaging $75,000 per month, and also about $40,000 per month for operating supplies." The electric current bill runs about $3,000 per month. All this represents what the appellant contends amounts to no more than a junk yard run on a large scale, while the appellees contend that it is a manufacturing plant, the machinery, tools, and raw material of which are "used entirely or chiefly in connection with manufacturing," and therefore entitled to exemption from assessment and taxation. Acts 1918, ch. 82, sec. 10. The city asserts that the test is in the product of the plant or operations, and that unless what it produces is a marketable commodity, ready for use, it cannot be considered a manufacturing plant within the meaning of the statute, while the company contends that the question is to be determined from the character of the operation and the means employed.

In *Carlin v. Western Assurance Co.*, 57 Md. 515, 526, in discussing the meaning of the word "manufacture," this court said: "Its meaning has expanded as workmanship and art have advanced; so that now nearly all artificial products of human industry, nearly all such materials as have acquired changed conditions or new and specific combinations, whether from the direct action of the human hand, from chemical processes devised and directed by human skill, or by the employment of machinery, which, after all, is but a higher form of the simple implements with which the human hand fashioned its creations in ruder ages, are now commonly designated as 'manufactured.' " See also *Carroll County v. Shriver*, 146 Md. 412, 126 A. 71. "Manufacture" is defined in the New Century Dictionary as "the making of goods or wares by manual labor or by machinery, especially on a large scale."

As stated in the opinion by Judge Pattison, in *Carroll County v. Shriver*, 146 Md. 412, 417, 126 A. 71, 72, "It is difficult to say in the abstract what is and what is not a manufacturing industry. What might be a manufacturing industry when defined or construed in connection with a statute

exempting tools, machines, engines, etc., from taxation, might not be so held when considered in connection with a statute having a different object or purpose." As said in 26 *Cyc.* 524, "There is of course a multitude of cases in which particular industries and products have been held respectively to be or not to be manufacture but it would be useless to cite these cases under the names of the industries or products there the subject of decision; * * * since the fact that a given thing or industry has been held to be manufacture under one set of circumstances is no assurance that it will be so held under another."

The plant of the shipbuilding company has all the earmarks of a manufacturing establishment. In its operations it employs several hundred men and uses a vast amount of machinery; and, while it does not produce a finished article ready for use, it reduces the hulls of steel vessels into a product of commercial use and value, namely, No. 1 heavy melting steel, regularly quoted in the "Iron Age" a recognized trade paper. *Eastern Rolling Mill v. Michlovitz,* 157 Md. 51, 145 A. 378; *Id.,* 158 Md. 486, 148 A. 836. It is because the shipbuilding company's operations stop here that the city contends the company does not come within the provisions of the statute. If, after cutting the vessels into usable shapes and sizes, it had gone on with the remelting of the steel and its fabrication into finished articles of merchandise ready for use, the city concedes that all the machinery and property employed in the entire process would be entitled to exemption.

The point made by the city is that the company does not make or manufacture anything; it merely takes a large piece of steel and cuts it into small pieces. This is all true, but it loses sight of the scale and character of the operation and the means employed. It is one of the stages, and a very important one, in the conversion of a large mass of steel into a variety of useful steel products, and whether the whole transaction is done by one mill or two mills does not affect the application of the statute to one or both. The statute is an invitation to manufacturing industries to go to Balti-

more, with the advantage of the exemption from taxation on the one hand and the great public benefit to be derived, on the other, from the addition of the payroll which comes from the employment of a large number of workmen. It is a situation which calls for the same kind of good faith which the law requires of two individuals contracting with each other. *Carroll County v. Shriver,* 146 Md. 412, 126 A. 71; *Broadbent v. Baltimore,* 134 Md. 90, 93, 106 A. 250.

In affirming the judgment of the city court, we simply hold that the Union Shipbuilding Company, as its plant and its operations are described in the record, is what it appears to be, a "manufacturer" within the meaning of the Acts of 1918, ch. 82, sec. 10.

*Judgment affirmed, with costs.*