## MAYOR AND CITY COUNCIL OF BALTIMORE *v.* HANOVER SHIRT COMPANY
[No. 86, October Term, 1934.]

*Decided February 6th, 1935.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, SLOAN, and MITCHELL, JJ.

*Lawrence B. Fenneman* and *W. Wallace Rhynhart, Assistant City Solicitors,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for the appellant.

*Wirt A. Duvall, Jr.,* with whom was *Philip B. Perlman* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The Hanover Shirt Company, one of the appellees in this case, was incorporated in January, 1932, and succeeded a business formerly conducted by a partnership operating under the same name as the present company, and engaged solely in the manufacture of shirts; the method of operations of both the partnership and the succeeding corporation being similar in every respect.

The company owns and occupies a five-story building located at No. 120 South Hanover Street, in Baltimore City, with about 5,000 square feet of floor space, and, as above stated, manufactures shirts; the finished product being sold, under its own labels, "Hanover" as the leading brand, and "L. & W." the secondary brand, through its own sales force and organization.

It operates as follows: Buys raw material consisting of cloth, piece goods, buttons, facings, linings, and various other sundry accessories in wholesale quantities. The cloth comes in bolts of 120 yards, delivered in large quantities at the Baltimore plant, where it is first carefully measured and tested. It is then spread, in as many as 400 thicknesses, upon large cutting tables about 150 feet long and 7 feet in width; upon the cloth, shirt patterns are placed, and the larger parts are cut, according to pat-

terns, by electric machines, the smaller parts being cut with small dies in a massive die press. The parts of cloth so cut are then stamped as to size, sleeve length, and bundle number, and transferred to sewing departments located on the Eastern Shore of Maryland, where they are sewed together by an independent contractor, and returned to the factory in the form of shirts for the finishing processes. These latter processes consist of examining, assorting, and starching the parts necessary to be starched, by running the shirts through starching equipment and hydraulic presses. The shirts are then pressed by hand irons, examined, assorted as to sizes, wrapped in cellophane, and packed in boxes; the finished product being then ready for shipment.

Machinery used at the plant consists of two cutting tables, one hundred and fifty by seven feet, four electric cutting machines, a die press with hundreds of steel dies, electric stamping machines, drills, and pattern making machines, automatic starchers, hydraulic steam presses, gas irons, gas boilers, high-pressure gas boilers, air blowers, motors, and various tables, bins, box-tying machines, and collar-pressing machines. In its operations in Baltimore City the company employs between seventy and a hundred persons in the various capacities of designers, markers, spreaders, trimmers, stamping machine operators, die press operators, operators of hydraulic and hand presses, examiners, sorters, packers, wrappers, and stock clerks, all of which classifications are recognized in the trade.

All of the raw material purchased by the company is used in the manufacture of shirts; and all of the machinery of the company is operated at its plant in Baltimore City, and exclusively used in the manufacture of shirts. In normal times the production has reached 100,000 dozen shirts per year, while at the time of the hearing before the State Tax Commission the output was at the low-water mark of from 400 to 500 dozen shirts per week. The various stages of manufacture involve fifteen major processes. Eight of these take place in the company's

plant before the pieces are shipped to the sewing contractor, and six of them after the shirts are sewed and returned; the sewing process being the remaining and only one performed beyond the limits of Baltimore City. The actual labor cost for such work as is performed in Baltimore is $1.25 per dozen shirts.

In 1929 the company, as a partnership, applied to the Appeal Tax Court of Baltimore City for exemption from taxation granted by the provisions of the city ordinance providing for manufacturers' exemptions.

The application was first denied, and, on appeal to the State Tax Commission, the action of the Appeal Tax Court was reversed and the exemption granted, by agreement between the applicant and the Mayor and City Council, in accordance with an opinion of the then city solicitor.

The company operated with the benefit of the exemption, without controversy, until October 22nd, 1931, when the Appeal Tax Court revoked the exemption theretofore granted. This action was appealed to the State Tax Commission, and on July 6th, 1933, the State Tax Commission reversed the order of the Appeal Tax Court. On August 1st, 1933, the Mayor and City Council of Baltimore appealed to the Baltimore City Court from the order of the State Tax Commission; and on September 5th, 1934, after formal hearing, the Baltimore City Court affirmed the order of the State Tax Commission reversing the action of the Appeal Tax Court. It is from the decision of the Baltimore City Court that this appeal is taken.

We have given, in perhaps greater detail than necessary, the manner in which the appellee operates its business, in order to determine the sole question raised in this appeal, namely: Does the appellee engage in such business as to entitle it to exemption from taxation by virtue of the provisions of the ordinance under which it claims exemption? That ordinance is found in article 46 of the Baltimore City Code of 1927, sec. 84, as follows: "In order to encourage the growth and development of manufacturing industries in Baltimore City and thereby

in the judgment of the Mayor and City Council, to promote the general welfare of the City, beginning with the assessment and levy of taxes for City purposes, for the year 1920, and thereafter, all personal property of every description owned by any person, firm or corporation and used entirely or chiefly in connection with manufacturing in Baltimore City, including mechanical tools, or implements, whether worked by hand or steam or other motive power, machinery, manufacturing apparatus or engines, raw material on hand, manufactured products in the hands of the manufacturer, bills receivable and business credits of every kind, due to the manufacturer, for goods manufactured in Baltimore City, shall be exempt from taxation for all ordinary municipal purposes."

As will be noted by the preamble of the above ordinance, the benefit sought to be derived from its passage was the encouragement of industry within the City of Baltimore, through the employment of labor and the general advantages incident to increased pay rolls within the limits of the municipality. And, while it must be conceded that the appellee has given substantial employment to labor and that the industrial interests of the city have reaped the benefits of its large pay roll, it is nevertheless contended by the Mayor and City Council of Baltimore that the company is not entitled to the exemption contemplated by the ordinance because, in the course of its fifteen major operations in the manufacture of its product, one of them, the assembling of its manufactured parts through the process of stitching together, is performed beyond the city limits.

We are not unmindful of the unbending rule requiring strict construction of tax exemption statutes. *Cooley on Taxation*, (4th Ed.) ch 13, p. 1577. But such statutes should be construed with a view of giving effect to legislative intent, and no construction should be placed upon them which in effect violates the very purposes for which the exemption ordinance is passed.

In the instant case, the legal question raised is whether or not the Hanover Shirt Company is entitled to a manu-

facturer's exemption in respect to its operations within the City of Baltimore, inasmuch as it permits a part of its manufacturing processes to be performed beyond the city limits. It will be noted that the ordinance exempts from municipal taxation "all personal property of every description owned * * * and used entirely or chiefly in connection with manufacturing in Baltimore City." And evidently the intent and purport of the ordinance is to exclude from the benefits of the exemption property held primarily for other purposes and used only incidentally in manufacturing, while at the same time exempting from municipal taxation property covered by its provisions, used entirely or chiefly in connection with manufacturing.

The qualification relates to the use of the property in manufacturing. It has no apparent relation to the fact that while, as in this case, the property is used entirely and chiefly in manufacturing, the appellee does not confine all of its manufacturing processes to its city plant, but performs one of them beyond the city limits. There is nothing in the language of the ordinance which requires not only that the property sought to be exempted shall be used entirely or chiefly in manufacturing in Baltimore City, but that, in addition, the articles worked upon in the city shall be completed, and that no part of the manufacture shall be performed beyond the city limits.

It is contended by the city that the company does not, through its own operations, produce within the city limits a marketable commodity, ready for use, and therefore cannot be considered a manufacturer within the meaning of the ordinance; while the company maintains that the question is to be determined from the character of its operations.

This brings before us for review the definition of the term "manufacture."

In *Carlin v. Western Assurance Co.*, 57 Md. 515, 526, in discussing the meaning of that word, this court said: "Its meaning has expanded as workmanship and art have advanced, so that now nearly all artificial products of

human industry, nearly all such materials as have acquired changed conditions or new and specific combinations, whether from the direct action of the human hand, from chemical processes devised and directed by human skill, or by the employment of machinery, which after all is but a higher form of the simple implements with which the human hand fashioned its creations in ruder ages, are now commonly designated as 'manufactured.' "

In *Carroll County v. Shriver Co.*, 146 Md. 412, 417, 126 A. 71, 72, this court, in an opinion rendered by Judge Pattison, said: "It is difficult to say in the abstract what is and what is not a manufacturing industry. What might be a manufacturing industry when defined or construed in connection with a statute exempting tools, machines, engines, etc., from taxation, might not be so held when considered in connection with a statute having a different object or purpose. As said in 26 *Cyc.* 524: 'There is of course a multitude of cases in which particular industries and products have been held respectively to be or not to be manufactured, but it would be useless to cite these cases under the names of the industries or products there the subject of decision; * * * since the fact that a given thing or industry has been held to be manufactured under one set of circumstances is no assurance that it will be so held under another.' "

And in *Baltimore v. State Tax Commission*, 161 Md. 234, 238, 155 A. 739, 741, this court, in dealing with a question almost similar to that raised in the instant case, speaking through Judge Sloan, said: "The plant of the shipbuilding company has all the earmarks of a manufacturing establishment. In its operations it employs several hundred men and uses a vast amount of machinery; and, while it does not produce a finished article ready for use, it reduces the hulls of steel vessels into a product of commercial use and value, namely, No. 1 heavy melting steel, regularly quoted in the 'Iron Age,' a recognized trade paper. * * * It is because the shipbuilding company's operations stop here that the city contends the company does not come within the provisions of the

statute. If, after cutting the vessels into usable shapes and sizes, it had gone on with the remelting of the steel and its fabrication into finished articles of merchandise ready for use, the city concedes that all the machinery and property employed in the entire process would be entitled to exemption. The point made by the city is that the company does not make or manufacture anything; it merely takes a large piece of steel and cuts it into small pieces. This is all true, but it loses sight of the scale and character of the operation and the means employed. It is one of the stages, and a very important one, in the conversion of a large mass of steel into a variety of useful steel products, and whether the whole transaction is done by one mill or two mills does not affect the application of the statute to one or both. The statute is an invitation to manufacturing industries to go to Baltimore with the advantage of the exemption from taxation on the one hand, and the great public benefit to be derived, on the other, from the addition of the pay roll which comes from the employment of a large number of workmen. It is a situation which calls for the same kind of good faith which the law requires of two individuals contracting with each other."

As was well said in the opinion from the city solicitor's office, given at the time the city originally granted exemption to the company, and appended to the appellee's brief: "The complicated structure of modern industry is such that very few manufacturers create out of an original raw material, a finished product ready for the ultimate consumer. It is a familiar fact that that which is the finished product of one manufacturer becomes in turn the so-called raw material of another manufacturer. Hence, the recognition by the taxing authorities that the cloths which are almost universally woven by a mill in no way controlled by the shirtmaker, constitute the raw material of the latter. The shirtmaker is no less entitled to the designation 'manufacturer' and to the exemptions accorded manufacturers, because he does not perform every process required to convert raw cotton taken from

the field into a garment ready for wear. Likewise, in the absence of a requirement that performance of every process involved in the fabrication of a bolt of cloth into a shirt shall be performed by the applicant for exemption, it would be improper to deny exemption to one who performs in Baltimore City all but one of the processes necessary to produce the finished garment. If, as we have seen, a manufacturer does not lose his tax exemption if he fails to perform one of the earlier processes essential in the course of manufacture, why should he be less entitled to the exemption if one of the intermediate processes is performed by another manufacturer, or by him in another jurisdiction?"

"Manufacture" is defined in the New Century Dictionary as "the making of goods or wares by manual labor or by machinery, especially on a large scale." And this, it must be admitted, is what is being done by the appellee.

*Order affirmed, with costs.*