# THE BALTIMORE SHIPBUILDING AND DRY DOCK COMPANY *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

*Taxation of Dry Dock Built on Land Conditionally Granted by the*
*United States.*

A part of the tract of land surrounding Fort McHenry, belonging to the United States Government and exempt from taxation, was conveyed by the Secretary of War in pursuance of an Act of Congress to a Dry Dock Company, upon the condition that a dry dock be constructed thereon and that the United States be accorded the right to the perpetual use of the dock for the examination and repair of its vessels free

from charges for docking. It was further stipulated that if the land conveyed be diverted to other purposes, or if the dry dock be unfit for use for a period of six months, then the land conveyed should revert to the United States. A dry dock was constructed on said land. *Held,*

1st. That the interest of the Dry Dock Co. in the land and dock is property liable to taxation by the State of Marylaad and the city of Baltimore, so long as it continues to be held by the company.

2nd. That the Dry Dock Co. is not such an exclusive agency of the United States as exempts it from taxation.

: Appeal from Baltimore City Court (STOCKBRIDGE, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*E. P. Keech, Jr.,* and *Leon E. Greenbaum* (with whom was *Archibald H. Taylor* on the brief), for the appellant.

*Chas. W. Field* (with whom was *Wm. Pinkney Whyte* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court confirming the action of the Appeal Tax Court of Baltimore City in assessing for taxation the lot of ground and dry dock of the appellant, situated at Locust Point in said city. The lot of ground on which the dock is constructed, with its water front, forms part of the property acquired and held by the United States and known as Fort McHenry. The appellant holds the lot under a conditional grant from the United States as a site for a dry dock, and the sole question presented by the record is whether the interest in the land and dock thus held by it are taxable by the State.

.. It is conceded that lands held by the United States are not taxable by the State within whose boundaries they lie and that this disability remains effective until the government sells the lands, when it terminates. Nor is there any dispute .in the present case that the land in question forms part of the Fort McHenry tract, which was purchased many years ago by the United States with the assent of the State of Maryland,

and that it was thereby made exempt from taxation by the State so long as it continued to be held by the United States. The only question in the case is whether the transaction between the United States and the appellant under which the latter is now in possession and enjoyment of the land was such as to terminate its exemption from taxation.

It therefore becomes necessary for us to consider what character of alienation by the United States of lands held by it for public purposes will prove effective to terminate or destroy their exemption from State taxation. The question in the precise form in which it is now presented is we believe a new one, but some of the principles underlying it have received judicial consideration in other cases.

It has been repeatedly held that where a donee or purchaser of lands from the United States has fully complied with all of the conditions upon which he is entitled to a deed or patent for them and to their use, he becomes the beneficial owner of them, and they are subject to State taxation as his property, although no deed or patent may have been executed and delivered to him; but so long as anything remains to be done or paid by the purchaser to perfect his right to the deed or patent the land remains exempt from taxation. *Kansas Pac. R. R. Co.* v. *Prescott*, 16 Wall. 603; *North. Pac. R. R. Co.* v. *Traill County*, 115 U. S. 600; *Union Pac. R. R. Co.* v. *McShane*, 22 Wall. 444; *Husman* v. *Durham*, 165 U. S. 144.

In *Central Pac. R. R. Co.* v. *Nevada*, 162 U. S. 512, and *North Pac. R. R. Co.* v. *Patterson*, 154 U. S. 130, it was held that the possessory claim of the railroad company to government lands lying within a State was subject to taxation by the State, notwithstanding the fact that the lands might thereafter be determined to be mineral lands and for that reason excluded from the operation of the grant from the United States to the railroad company. And in *Maish* v. *Arizona*, 164 U. S. 597, a party in possession of lands under an unconfirmed Mexican land grant was held to have a valuable equitable right, which was subject to taxation by the State in which the lands were located, although it might thereafter· be adjudged that the lands in fact belonged to the United States.

In *North. Pac. R. R. Co.* v. *Patterson, supra,* the Court quoted with approbation from *Wisconsin R. Co.* v. *Price Co.,* 133 U. S. 496, the statement "that he who has the right to property, and is not excluded from its enjoyment, shall not be permitted to use the legal title of the government to avoid his just share of State taxation."

In the present case the appellant is in possession and enjoyment of the land in question under a conveyance from the Secretary of War made in pursuance of an Act of Congress approved June 19th, 1878, which provided:

"That the Secretary of War be, and he is hereby, directed to convey to the Baltimore Dry Dock Company of Baltimore City, a body corporate, created under the laws of the State of Maryland, for the consideration hereinafter described, so much of the land belonging to the United States, in said city, known as the Fort McHenry tract, as lies between the northwestern boundary line of the said tract, and a line parallel thereto and distant four hundred and fifty feet therefrom, and between a line two hundred and fifty feet from the northern side of Fort avenue (a street or avenue of said city extended), and parallel thereto, and the northwest branch of the Patapsco river.

"Sec. 2. That in consideration of the said conveyance, and as the condition upon the same is made, the said Dry Dock Company shall be required to construct, upon the land conveyed as aforesaid, within two years from the date of the conveyance, an efficient 'Simpson's Improved Dry Dock,' four hundred and fifty feet in length, and to accord the United States the right to the use forever of the said dry dock, at any time, for the prompt examination and repair of vessels belonging to the United States, free from charge for docking; and if at any time said property hereby conveyed shall be diverted to any other use than that herein named, or if the said dry dock shall be at any time unfit for use for a period of six months, or more, the property hereby conveyed with all its privileges and appurtenances shall revert to, and become the absolute property of the United States."

The deed followed the terms of the Act of Congress and conveyed the land to the appellant upon the conditions therein set forth.

Under this conveyance the appellant did not acquire the

absolute fee-simple title to the land, but took only an estate therein limited to a particular use under special conditions and liable to be defeated upon a misuser or non-user; yet it did take a valuable interest in the land of which it has been in full possession and enjoyment ever since.    The deed to the appellant contains no restraint upon the alienation of the estate conveyed by it, which partakes of all of the essential features of property.    The fact that the United States retains and may at some future time exercise the right to retake possession of the land upon a breach of the conditions of the grant ought not, when no such breach is alleged, to enable the appellant to escape its just share of State taxation.    If the land should ever revert to the United States under the terms of the grant the taxable interest in it would be destroyed and in that event the assessment of it should be stricken off the books of the tax department.    Or, if the United States should in the exercise of its reserved right to use the dock on the land for its own vessels continuously, or to such an extent as to materially deprive the appellant of its possession and enjoyment, that circumstance would form proper ground for a suitable abatement for the time being of the assessment of the property for the purpose of State taxation.

Another ground on which the appellant rests its claim for the exemption of this property from taxation is that the dock with its equipment is in effect an agency of the government for the docking of its ships, and therefore fall within the operation of the well recognized principle that the instruments and agencies used by the Federal Government to execute its sovereign powers are not taxable by the States in which they are located. It is settled however that this principle does not apply to the property of individuals or corporations which is not in the exclusive use or under the exclusive control of the government although the latter may have a fixed right to a preference in the use of such property when occasion may require.

It was held in *Thompson* v. *Union Pac. R. R. Co.*, 9 Wall. 579, that the property of the Union Pacific Railroad Co. was liable to State taxation although it was admitted that the road

formed part of a system of roads constructed under the direction and authority of Congress, and that it was bound to perform certain duties for the government and ultimately to pay to it a fixed percentage of its revenue and that its property was mortgaged to the United States.    And in *Union Pac. R. R.* v. *Peniston*, 18 Wall. 5, it was again held that the property of the railroad company was liable to State taxation although the road was to some extent an agent of the general government designed to be employed and actually employed in the legitimate service of the government both military and postal. The Court in that case said: "It is therefore manifest that exemption of Federal agencies from State taxation is not dependent upon the nature of the agents, or upon the mode of their constitution, or upon the fact that they are agents, but upon the effect of the tax, that is, upon the question whether the tax does in truth deprive them of power to serve the government as they were intended to serve it or does hinder the efficient exercise of their power.    A tax upon their property has no such necessary effect."

Tested by the propositions thus laid down it is apparent that the tax now under consideration does not deprive the appellant of the power to serve the government as it was intended to serve it, and its payment cannot be escaped on the ground that it is an agency of the government.

Of course if it should ever become necessary for the State or city to sell this property of the appellant for the non-payment of taxes nothing more could be sold than its conditional estate in the land and the permanent improvements thereon, subject to all the rights of the United States therein.

It has been the custom and policy of this State, when it became necessary to sell for non-payment of taxes land in which several parties held different estates *all of which were subject to assessment and taxation*, to sell the fee-simple estate in exercise of its sovereign power, (*Cooper* v. *Holmes*, 71 Md. 20; *Textor* v. *Shipley*, 86 Md. 424), but it is manifest that the sovereign power of the State does not embrace within its operation the right or estate of the Federal Government in the land now in question.

We hold that the conditional interest or estate of the appellant in this land, subject to the rights of the United States therein, constitutes property within the meaning of sec. 2 of Art. 81 of the Code, and is taxable by the State and the city of Baltimore. In view of the fact that the situation of the title to the land is such that the absolute fee therein cannot be taxed and therefore could not be sold for non-payment of taxes, the assessment books should be so modified as to show that the estate assessed is subject to the right and interests of the United States in the land and improvements.

The order appealed from will be affirmed.

*Order affirmed with costs.*

(Decided April 2nd, 1903.)