CLARKE *v.* UNION TRUST CO. OF DISTRICT
OF COLUMBIA

[No. 64, October Term, 1948.]

128

*Decided January 14, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and EMORY H. NILES, of the Supreme Bench of Baltimore City, Specially Assigned, JJ.

*Richard W. Case, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for the appellant.

*Jo V. Morgan,* with whom was *Robert P. Smith* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Walter C. Clarke, Register of Wills for Montgomery County, appellant, from a decree of the Circuit Court for Montgomery County ordering that $117,033.57, devised under the will of Edward L. Morrison to the Shriners' Hospital for Crippled Children, hereinafter known as the Shriners' Hospital, is

exempt from the Maryland Collateral Inheritance Tax imposed by Article 81, Section 110, of the Annotated Code of Maryland, 1943 Supplement.

The facts of the case were stipulated and agreed to by counsel for the respective parties and are substantially as follows. Edward L. Morrison died testate, a resident of Montgomery County on August 14, 1946. Under his Last Will and Testament he devised specific bequests to his widow. He also devised the rest and residue of his estate in trust for the benefit of his widow for her life and upon her death said residue was to be paid free of the trust to Shriners' Hospital. The widow renounced the will and elected to take her legal share in all the property of the decedent. The Shriners' Hospital then became and is entitled to receive one half of decedent's net estate. The amount which it is entitled to receive is $117,033.57, upon which the appellant claims there is due and payable inheritance tax of seven and one half per-cent, or $8,777.44.

Shriners' Hospital is a non-profit corporation, organ-ized under the laws of the State of Colorado. It has no capital stock and no profits inure to the benefit of any person. The purpose for which this hospital is organized follows. "To maintain, control, conduct and superintend any and all charities, benevolences and Shriners Hos-pitals for Crippled Children established, maintained, owned and controlled by this Corporation, or which may now or hereafter be established by Shriners Hospitals for Crippled Children or any subsidiary or affiliated cor-poration thereof."

This corporation maintains twelve hospitals in the Continental United States, one in Hawaii, two in Canada, and one in Mexico. One hospital is located in Philadelphia which serves crippled children who are residents of the District of Columbia, Virginia, West Virginia, Maryland, New Jersey, Pennsylvania, and New York. These hos-pitals furnish medical and surgical treatment for chil-dren. There is no charge exacted or received from any child treated in these hospitals or from the parent, guar-

dian, or any other person. Only such children who cannot afford other treatment are received in these hospitals. This corporation receives no contributions from any state or subdivision thereof but is maintained by voluntary contributions made by Shriners and other charitable minded persons throughout the country.

During the years 1936 to 1945 and through September, 1946, the total number of children treated at the hospital in Philadelphia was 2,031. Of this number ninety-six were from the State of Maryland. Of the children treated, the ninety-six from Maryland were .0473 of the total number of children treated. Although not stipulated, it appears that within the last ten years two tenths of one percent of all the money spent by this corporation was spent on Maryland children.

The Shriners' Hospital, a separate corporation, is an affiliate of the Imperial Council of the Ancient Arabic Order of the Nobles of the Mystic Shrine for North America, a benevolent and fraternal corporation existing under the laws of the State of Iowa, and hereinafter called the Shrine. The officers and directors of Shriners' Hospital and the Shrine are the same with the exception that the former has two officers, namely, chairman of the board of trustees and assistant secretary, which the latter does not have. There are two temples or units of the Shrine in Maryland, one located in Baltimore and the other located in Cumberland. It is the policy of the Shrine that each of the members constitutes himself a committee of one to report to his temple the discovery of any crippled child who may be classified as an orthopedic case. When such a report is made, the matter is referred to a special committee of the temple which investigates the matter and if certain requirements are met, including the inability of the parents or family to pay for medical attention, and an examination by a medical unit or committee of the respective Shrine temple, the child is admitted to the Shriners' Hospital in Philadelphia. If the parent of any child admitted to the Hospital is financially unable to visit the crippled child

in Philadelphia the temple, upon application of the parent, furnishes to such parent the necessary financial assistance and transportation to the Hospital in Philadelphia.

The defendant below, appellee here, the Union Trust Company of the District of Columbia, a corporation, executor of the estate of Edward L. Morrison, deceased, has not yet paid any inheritance tax on the said sum of $117,033.57 claiming that such tax is not payable. From a decree of the Circuit Court for Montgomery County signed by two judges, (Judge Prescott filing a dissenting opinion), upholding the contention of the appellee, the appellant appeals here, contending that the inheritance tax is due.

Article 81, Section 110, of the 1943 Supplement of the Annotated Code of Maryland, providing for inheritance tax also contains the following provision: "And provided further that nothing in this section shall apply to property passing, in trust or otherwise, to or for the use of a corporation, trust or community chest, fund, or foundation, created or organized under the law of the United States or of any State or territory or possession of the United States, organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, *a substantial part or all of the activities and work of which are carried on in the State of Maryland,* and no part of the net earnings of which inures to the benefit of any private shareholder or individual." (Italics supplied here.)

The question for our decision therefore is whether a substantial part or all of the activities and work of the Shriners' Hospital are carried on in the State of Maryland. We will first consider the question whether any part of the activities and work of the Shriners' Hospital is carried on in Maryland. On this question the appellee cites a number of cases. The case of *Layman Foundation v. City of Louisville,* 232 Ky. 259, 22 S. W. 2d 622, involved the claim of a religious and educational institution incorporated in Tennessee to exemption from tax-

ation under an ordinance exempting religious and educational institutions in Louisville, Kentucky. It was found that although the taxpayer was an educational institution, the institution's income was devoted entirely to its work in Tennessee and no service was rendered to the people of Kentucky. Basing its ruling on the principle that taxation is the rule and exemption the exception and immunity from sharing the common burden is allowed only to those who perform duties which the State itself is obligated to discharge, the claim for exemption was denied.

The case of *State v. Holcomb*, 85 Kan. 178, 116 P. 251, 50 L. R. A., N. S., 243, Ann. Cas. 1912D, 800, involved a statute of the State of Kansas which excluded from taxation, among other things, property used exclusively for municipal purposes. Kansas City, Missouri, built a water works plant in the State of Kansas, which was owned exclusively by Kansas City, Missouri, and used exclusively for public purposes in Kansas City, Missouri. The Kansas court, finding that the maintenance of the water works did not inure to the benefit of the people of Kansas or to any municipality therein denied the exemption.

In the case of *Jackson v. Phillips*, and others, 14 Allen, Mass., 539, at page 556, in discussing the definition of a legal charity, the court said the following: "A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature."

In *Lloyd Library & Museum v. Chipman*, 232 Ky. 191, 22 S. W. 2d 597, at page 598, it is said: "Exemptions to charitable and educational institutions are bottomed on the

fact that they render service to the state, and thus relieve the state and its people of a burden which they otherwise would have to assume. In its final analysis, an exemption is equivalent to an appropriation."

Apparently the exemption, under the Ohio statute exempting from taxation bequests to charitable institutions, is very similar to that of this State. The appellee cites to us cases decided by probate courts of Ohio which sustain appellee's contention and one of which is alleged to be a transfer by will to Shriners' Hospital, as in the instant case. However, as these decisions give no reasons for their conclusions they are not of much assistance to us here.

There is no doubt in this State that statutory exemptions from taxation are strictly construed against all types of taxpayers. Code, 1947 Supplement, Article 81, Section 7. Before a taxpayer can obtain an exemption, it is upon him to show affirmatively that the alleged exemption has been clearly allowed by law. The exemption cannot be sustained unless it is shown to be within the spirit as well as the letter of the law. The right of taxation is never presumed to be surrendered unless it be the result of express terms or necessary inferences. Exemptions from taxation claimed under legislative acts should be rigidly construed and established beyond reasonable doubt. It is only where a deliberate purpose of the Legislature to grant an exemption is expressed in clear and unequivocable terms that a claim to an exemption can be maintained. *Appeal Tax Court v. Gill*, 50 Md. 377; *Broadbent Mantel Co. v. Baltimore*, 134 Md. 90, 106 A. 250; *Pittman v. Housing Authority*, 180 Md. 457, 25 A. 2d 466.

It was said by Chief Judge McSherry in the case of *Sindall v. Baltimore City*, 93 Md. 526, at pages 529 and 530, 49 A. 645, 646, involving certain tax exemptions: "Like every other exemption from taxation, it must be strictly construed. The taxing power is never presumed to be surrendered, and therefore every assertion that it has been relinquished must, to be efficacious, be distinctly

supported by clear and unambiguous legislative enactment. To doubt is to deny an exemption." This rule has been consistently applied by this Court in all cases in which exemption from taxes is claimed. *Pittman v. Housing Authority, supra; Celanese Corp. v. Davis,* 186 Md. 463, 47 A. 2d 379. This rule of strict construction of tax exemption statutes has not been relaxed in favor of charitable or benevolent corporations. *Frederick County Commissioners v. Sisters of St. Joseph,* 48 Md. 34; *Grand Lodge, Knights of Pythias v. Baltimore,* 157 Md. 542, 146 A. 744.

As contended by the appellee, while exemption stautes must be strictly construed, no construction should be placed upon a statute which violates the purposes for which the statute was passed. Also no construction should be placed upon statutes which in effect violates the very purposes for which the exemption statute is passed. *Carroll County Com'rs v. B. F. Shriver Co.,* 146 Md. 412, 126 A. 71; *Mayor and City Council of Baltimore v. Hanover Shirt Co.,* 168 Md. 174, 177 A. 160; *State Tax Commission v. Standard Oil Co.,* 181 Md. 637, 31 A. 2d 621. In these cases the question was what the statute meant by manufacturing. In the case before us, there is no ambiguity in the language of the statute. It exempts only those corporations which carry on a substantial part or all of its activities and work in the State of Maryland.

From the stipulation it appears that Shriners' Hospital has no office, officer, doctor, nurse, employee, hospital, agent, plant, equipment, physical assets of any kind, place of business, or establishment within the State of Maryland. Nor does Shriners' Hospital contend that it spends one cent of its income in Maryland. It cannot be contended that the work done in reporting crippled children by the Shrine in this State, a separate corporation, is work done by the Shriners' Hospital.

The case of *Grand Lodge, Knights of Pythias v. Baltimore,* 157 Md. 542, 146 A. 744, *supra,* involved the question whether real estate in Baltimore City was exempt from taxation by reason of a provision exempting from

taxation, buildings, equipment and furniture of hospitals, asylums, charitable or benevolent institutions, or the grounds appurtenant thereto in any city or incorporated town of this State which were necessary to the respective uses thereof. Grand Lodge of the Knights of Pythias of Maryland, (Grand Lodge), was a corporation incorporated for benevolent and charitable purposes. Maryland Pythian Castle Building Commission of Baltimore City, (Building Commission), was a corporation formed by a building commission of the Grand Lodge to purchase a suitable site in Baltimore City and to erect thereon a building for the use and benefit of the Grand Lodge. This new corporation sold the old site of the original Grand Lodge building, purchased a new location which was conveyed to the new corporation by deeds, and later built a building thereon. On February 18, 1928, Building Commission delivered possession of the premises to Grand Lodge and on March 20, 1928, it conveyed the property to Grand Lodge. Since that conveyance Building Commission, the corporation, had been dormant. The question arose as to whether the lot was assessable for the tax years of 1927 and 1928 to Building Commission, a corporation as trustee, which was in actual possession and the owner of the legal title to the land in fee simple or to Grand Lodge, a corporation, the *cestui que trust* or equitable owner whose right to the enjoyment of possession and to be granted an absolute title had not ripened. Judge Park in that case pointed out that, although the general rule was that the holder of the legal estate was the proper person to be assessed for the payment of taxes, the petitioners asked the court to disregard this established rule upon the theory that the beneficial owner is the real and substantial owner. It was said in that case, 157 Md. at pages 548, 549, and 550, 146 A. at page 746: "If the court would entertain such a purpose because of equitable considerations, the Legislature has barred the way by concluding the exemptions created by the explicit command that 'each and every one of said exemptions from taxation shall be strictly construed.'

Code [1924], art. 81, sec. 4. This statutory rule of construction is in accord with the rule established and applied in the decisions of this court, which defined the rule in *Broadbent Mantel Co. v. Baltimore,* 134 Md. 90, 93, 106 A. 250, 251: 'The fundamental rule governing the construction of exemptions is that the particular exemption claim cannot be sustained unless it is shown to be within the spirit as well as the letter of the law (*United Railways [& Electric] Co. v. Baltimore City,* 93 Md. [630], 634 (49 A. 655, 52 L. R. A. 772), and the party asserting the exemption must show that the power to tax in the particular case has been clearly relinquished, and, as this Court has said in *Appeal Tax Court v. Rice,* 50 Md. [302], 312: 'If this has not been done the question must be resolved in favor of the State.' * * * Cases will be found where the appellate courts of other jurisdictions, in construing their respective revenue statutes, have determined that the exemption of charitable and benevolent institutions from taxation upon their property comprehend an equitable as well as a legal ownership. See *Cooley on Taxation* (4th ed.), § 677, and citations in notes. However, these furnish no authority for a departure from our own considered rule, which not only arises upon precedent but which is also made mandatory by legislative enactment. Moreover, differences in statutes and in the circumstances lessen the weight to be given the construction of revenue laws in force in foreign jurisdictions, * * *. Moreover, in controversies involving the construction of revenue laws which relate to the assessment, levy, imposition, and collection of taxes, the court is governed by rules of law and not by principles of equity; and so is not at liberty to allow an exemption which is not within either the letter or spirit of the statute." Certainly Shriners' Hospital and the Shrine are not more closely affiliated than Grand Lodge and Building Commission were in this case.

Of course, the work done by the Shriners' Hospital is very worthwhile and of the highest benevolent character. The allowance however of the exemption asked is not

within the power of the judiciary. It is a legislative problem.

We know that the purposes of the collateral inheritance tax was to raise revenue for the State of Maryland. Whether the Shriners' Hospital carries on any of its activities and work in Maryland is at least doubtful. The exemption on which the appellee relies is a comparatively recent one and was not adopted by the Legislature until the Session of 1943 by Chapter 964. Had the Legislature intended to exempt dispositions to foreign corporations, if their work or activities benefited residents of Maryland, it would have been very easy for this to have been stated. As has been said many times by this Court and as hereinbefore set forth, "to doubt is to deny an exemption". The decree must therefore be reversed and the case remanded for the passage of a decree ordering that the transfer by the will of Edward L. Morrison of the sum of 117,033.57 to the Shriners'. Hospital for Crippled Children is subject to the Maryland Inheritance Tax imposed by Article 81, Section 110 of the Annotated Code of Maryland, 1943 Supplement.

> *Decree reversed, with costs, and case remanded for the passage of a decree as herein set forth.*