## MEADE HEIGHTS, INC. ET AL. *v.* STATE TAX COMMISSION OF MARYLAND
### (Five Appeals in One Record)

[No. 96, October Term, 1952.]

22

*Decided March 13, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*Hilary W. Gans,* with whom were *A. Herman Siskind, Harry S. Kruger* and *C. Edward Jones* on the brief, for the petitioners.

*Berryman Green, Special Assistant to the Attorney General of the United States,* with whom were *Charles S. Lyon, Assistant Attorney General,* and *Ellis N. Slack, Special Assistant to the Attorney General,* on the brief, for the United States.

*Robert M. Thomas, Assistant Attorney General,* with whom was *Edward D. E. Rollins, Attorney General,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Appellants are three domestic corporations of the State of Maryland who leased five parcels of land from the United States of America and constructed apartment projects thereon, the land in each case being located within military or other reservations over which the federal government has exclusive jurisdiction. The County Commissioners of Anne Arundel County and Harford County assessed appellants for ordinary taxation both as to the land and the buildings. Appellants then took an appeal to the State Tax Commission, which reversed the assessments as to the land, but sustained the assessments as to the buildings. The appellants appealed to the Baltimore City Court; there was no cross-appeal. The court affirmed the assessments, and the appeal comes here. It is conceded that the principles in all five cases are the same, so we shall discuss only the facts relating to Meade Heights, Inc.

The lease between the Secretary of the Army, representing the federal government, and Meade Heights, Inc. provided for the lease of 28½ acres of land at Fort Meade, to be used for the erection of 348 housing units by the lessee, according to approved plans. It was made under the authority of Public Law 364, 80th Congress, passed in 1947 and codified as Title 10 U. S. C. A., Sec. 1270, which authorized the Secretary of the Army "to lease such real and personal property under the control of his Department * * * to such lessee or lessees and upon such terms and conditions as in his judgment will promote the national defense or will be in the public interest." Sec. 1270d provides that the "lessee's interest, made or created pursuant to the provisions of Sections 1270-1270d of this title, shall be made subject to state or local taxation." Title 12 U. S. C. A., Sec. 1748, passed two years later, established a system of mortgage insurance to encourage private interests to build and operate housing projects on military reservations. To be eligible the mortgagor had to be approved and to agree to restrictions as to sub-rents and tenants, who were to be primarily military personnel.

The lease of the land was for a period of 75 years, at a ground rental of $720 *per annum,* with a provision that title to all improvements erected thereon should be and remain in the lessee. At the termination of the lease, the lessee was to have the right to remove the improvements if it so elected. If it should not elect to do so, they would become the property of the government without compensation to the lessee. During the term of the lease the lessee was to fully insure the improvements for its own benefit and the benefit of any mortgagee. The government agreed to provide certain services, such as police and fire protection and garbage collection, on a reimbursement basis. The lessee agreed to comply with all applicable State, county and municipal laws as to construction, sanitation, licenses, permits and all other matters. The lease provided that the lessee should pay "all taxes, assessments, and similar charges,

which, at any time during the term of this lease, may be taxed, assessed or imposed upon the government or upon the lessee with respect to or upon the leased property. In the event any taxes, assessments, or similar charges are imposed with the consent of the Congress of the United States upon the property owned by the government and included in this lease (as opposed to the leasehold interest of the lessee therein), this lease shall be renegotiated so as to accomplish an equitable reduction in the rental provided above, which shall not be greater than the difference between the amount of such taxes, assessments or similar charges and the amount of any taxes, assessments or similar charges which were imposed upon such lessee with respect to his leasehold interest in the leased property prior to the granting of such consent * * *." As we read this provision, it called for renegotiation only in the event that Congress should consent to taxation of the government's interest in addition to that of the lessee, which is recognized as fully taxable as of the date of execution.

The State Tax Commission and the court below held that the appellant had the only substantial interest in the buildings erected by it under the terms of the lease, and could be assessed on the full value thereof. Appellant contends that the lessee does not hold a complete interest in the buildings and, therefore, an assessment measured by the full value of the buildings goes beyond the permissibe limits of state taxation, as fixed by Congress. Appellant also contends that the law of Maryland does not authorize the taxation of any interest in property less than a fee simple interest. The United States, as intervenor, supports the first contention, but takes no position as to the second. We shall deal with the contentions in inverse order.

Section 7(1), Article 81, Code of 1951, provides for the "assessment to the owner and taxation for ordinary taxes" of "all real properties in this State, by whomsoever owned, including that owned or leased by the United States, or any department or agency of the United States,

to the fullest extent possible under the Constitution of the United States and laws of the United States pursuant thereto and in conformity therewith * * *." Section 2(12) of said Article provides: "Real estate shall include leaseholds, unless such construction would be unreasonable." It has been consistently held that limited estates in real property are taxable. *Cf. Williams' Case,* 3 Bland 186, 259. In *Appeal Tax Court v. W. Md. R. R. Co.,* 50 Md. 274, the railroad had leased for 99 years, renewable forever, certain property from the City, the improvements on which had been erected by the City. The reversionary interest of the City was exempt. The court held that the Railroad "must be regarded for practical purposes as the substantial owner of the leasehold interest in the property", and said: "We are of opinion that the Company is liable to be assessed with the leasehold interest; * * *." A similar conclusion was reached in the case of *P., W. & B. R. R. Co. v. Appeal Tax Court,* 50 Md. 397, where the owner of the leasehold was assessed and taxed on the full value of the improvements which it erected, though the fee was tax-exempt. See also, as to the taxation of easements, *Con. Gas Co. v. Baltimore City,* 101 Md. 541, 61 A. 532, 1 L. R. A., N. S., 263; *Con. Gas Co. v. Baltimore City,* 105 Md. 43, 65 A. 628; and *United Rys. Co. v. Baltimore City,* 111 Md. 264, 73 A. 633.

In *Baltimore Dry Dock Co. v. Baltimore City,* 97 Md. 97, 54 A. 623, land previously conveyed to the United States was conveyed by it to a private corporation, on condition that the latter should build a drydock according to prescribed specifications and operate it, giving free dockage to government vessels. The conveyance provided that the property should revert to the United States absolutely, if the property should be used for any other purpose, or if the drydock were unfit for use for a period of six months. The court said: "Under this conveyance the appellant did not acquire the absolute fee-simple title to the land, but took only an estate therein limited to a particular use under special conditions and

liable to be defeated upon a misuser or non-user; yet it did take a valuable interest in the land of which it has been in full possession and enjoyment ever since. * * * We hold that the conditional interest or estate of the appellant in this land, subject to the rights of the United States therein, constitutes property within the meaning of sec. 2 of Art. 81 of the Code, and is taxable by the State and the city of Baltimore." The decision was sustained by the Supreme Court in an opinion by Mr. Justice Holmes. *Baltimore Shipbuilding & Dry Dock Co. v. Baltimore*, 195 U. S. 375, 25 S. Ct. 50, 49 L. Ed. 242.

The appellant contends, however, that the law was changed by the repeal of the so-called omnibus clause of the tax law in 1929. We do not agree. Section 2, Article 81, prior to 1929, provided that certain types of property should be exempt, and then stated that "all other property of every kind, nature and description within this State * * * shall be valued and assessed for the purpose of state, county and municipal taxation to the respective owners thereof." The amendments adopted by Chapter 226, Acts of 1929, undertook to list the types of taxable property and then spell out the exceptions. But it is clear from the report of the Revision Commission of 1928, that no change in substance was intended. As stated in the preamble to Section 1, the intention was to codify and clarify, not to make changes in substance. The right of taxation is never to be presumed to be surrendered. *M. & C. C. of Baltimore v. B. & O. R. R. Co.*, 6 Gill 288; *Co. Comm'rs v. Sisters of St. Joseph*, 48 Md. 34; *Sindall v. Baltimore City*, 93 Md. 526, 530, 49 A. 645; *Clarke v. Union Tr. Co. of D. C.*, 192 Md. 127, 134, 63 A. 2d 635.

The language we have quoted making real property, including leaseholds, taxable to the owner was not designed to create an exemption. The provisions of Section 3(c), Article 81, Code of 1951, providing that the owner of certain limited interests in real and personal property shall be treated as the owner in fee for purposes of taxation, merely allows the person in possession

to be taxed on the whole interest, where the whole interest is taxable, for the convenience of the tax authorities. *Cf. Baltimore v. Canton Co.*, 63 Md. 218, 234, and *Hill v. Williams*, 104 Md. 595, 604, 65 A. 413. Clauses similar to Section 3(c) were in effect when all of the cases above cited, holding estates or interests less than a fee taxable under Maryland law, were decided. The argument of appellant, based on the lack of a provision for tax sale of less than the fee, was sufficiently dealt with in *Baltimore Dry Dock Co. v. Baltimore City, supra*, and we think it is without merit. We conclude that under the existing Maryland law a property interest less than a fee is subject to assessment and taxation. Since we reach this conclusion from a construction of the statute in the light of the authorities and legislative history, it is unnecessary to discuss the appellee's argument that this result would be required by Article 15 of the Maryland Declaration of Rights.

Coming to the main point, it is perfectly clear that, in the absence of congressional consent, express or implied, a State cannot impose a direct tax upon property owned by the federal government or held for it. *Johns Hopkins Univ. v. Co. Commrs.*, 185 Md. 614, 45 A. 2d 747; *United States, et al. v. Co. of Allegheny,* 322 U. S. 174, 64 S. Ct. 908, 88 L. Ed. 1209. But it is equally clear that private interests in government property are taxable to their full value. *Baltimore Dry Dock Co. v. Baltimore City, supra; S. R. A., Inc. v. Minnesota*, 327 U. S. 558; *Buckstaff Bath House Co. v. McKinley,* 308 U. S. 358, 60 S. Ct. 279, 84 L. Ed. 322; *New Brunswick v. United States*, 276 U. S. 547, 48 S. Ct. 371, 72 L. Ed. 693. In the instant case, Congress has definitely consented to the taxation of the lessee's interest, whatever that may be. It can only complain if, in fact, its reserved interest is subjected to taxation.

In the absence of a cross-appeal, we need not consider whether the Tax Commission was right or wrong in striking down the assessment on the land, or in failing to make any assessment on it. Its reason for abating

the land assessment was that "no testimony has been produced before us segregating that valuation [of the reversionary interest of the government] from the interest of the lessee." The assessment before us is against the lessee, and purports to reach the full value of the buildings in its hands. The government cannot complain if the tax, otherwise sustainable, increases government costs by its economic incidence. *James v. Dravo Contracting Co.*, 302 U. S. 134, 58 S. Ct. 208, 82 L. Ed. 155; *Alabama v. King & Boozer*, 314 U. S. 1, 62 S. Ct. 43, 86 L. Ed. 3.

Under the terms of the lease, we think the government has committed itself to the legal proposition that title to the buildings is in the lessee. The lease so declares. The fact that another branch of the government supplied funds secured by a mortgage is not material. *New Brunswick v. United States, supra.* Nor is the fact that the buildings were constructed by the lessee according to plans approved by the government. *Baltimore Dry Dock Co. v. Baltimore City, supra.* Even at the end of the lease, the lessee has the right to remove the buildings. The appellant argues, however, that the retention of control, in the form of agreements not to sublease except to military personnel (with certain exceptions) and at approved rental figures, is an "interest" that belongs to the government which should have been excluded from the assessment.

We think the argument is unsound. The "lessee's interest" referred to in the federal statute is described in the lease as the "leasehold interest", and the tax contemplated by the statute is referred to in the lease as a tax "upon the leased property". The interest to the taxation of which Congress has consented is a property interest, and the fact that it is not wholly free of restrictions as to use does not detract from the quality of of the legal estate in the lessee, or render it immune from tax. The fact that there is a reversionary interest which is exempt, in this case a mere possibility of reverter, would not vitiate an assessment of improvements

to the lessee at their full value. *P., W. & B. R. R. Co. v. Appeal Tax Court, supra; Susquehanna Power Co. v. State Tax Com.*, 159 Md. 334, aff. 283 U. S. 291, 51 S. Ct. 434, 75 L. Ed. 1042. The Supreme Court cases cited above indicate that a nominal or remote interest in the government would not preclude a tax. The most that could be claimed is that the assessment was too high, because the valuation did not take into account the possible diminution in value due to the restrictions upon the use.

The appellant points out that in the *Baltimore Dry Dock* case, the assessment was reduced to reflect the condition calling for free dockage, a fact stressed by the Supreme Court as indicating that only the lessee's interest was assessed. In the instant case it has not been shown that the restrictions detract from the value of the lessee's interest. It is true that the subrents have been "frozen", a condition that exists in many other places, and that the subleases are limited in the main to military personnel. However, occupancy is now 100%. If demand should fall off in the future, due to a slackening of the defense effort or other reasons, such a change would naturally be reflected in the subsequent annual assessments. The subrents fixed are in fact adequate to retire the mortgage and show a handsome profit to the private investor.

"The Maryland law requires that all property shall be assessed 'at the full cash value thereof on the date of finality.' Code 1939, art. 81, sec. 11 [now section 13]. Ordinarily the cash value of property is the market value." *Rogan v. Commrs. of Calvert Co.*, 194 Md. 299, 311, 71 A. 2d 47, 52. It was recognized in that case, however, that assessors are not required to be guided entirely by market prices, regardless of how "thin" the "spot market" may be, or how much it may be affected by temporary or abnormal conditions. In the instant case, it was shown that there were no sales of comparable properties that could be used as a guide, and the assessors used a standard method of reproduction cost, set out

in the Assessment Manual approved by the Tax Commission, based on 1944 costs of construction in an effort to eliminate any inflated costs. The figure arrived at, $1,331,508, was extremely conservative, as demonstrated by comparison with the F.H.A. estimate of reproduction cost of $3,354,755, based on three different calculations. The mortgage granted, which was less than full value, was $2,832,800. The actual cost of the buildings was probably in excess of $2,800,000. The assessors then undertook to find value by using a standard formula for capitalization of the gross subrents received, and arrived at a figure of $1,528,086. The difference between this figure and the figure arrived at for the buildings, $197,367.00, was ascribed to the land. It was this difference that the Tax Commission eliminated.

It is not contended that the final assessment was illegal, arbitrary or unreasonable. The contention is that it failed to segregate, and hence included, the government's interest. We have pointed out that the government has no property interest in the buildings except of a remote and indeterminate character. In answer to the contention that the restrictions as to tenants and subrents constitute a residual interest, we think that insofar as the assessment is lower than a fair capitalization of existing subrents, it cannot be said that the effect of the restrictions was disregarded. The only testimony that might be taken as challenging the assessors' capitalization was that of Mr. Moss, a real estate expert. He sought to place a valuation of $212,000 on the "lessee's interest", which he stated would be what an investor would pay for the properties under the restricted conditions. He admitted that in reaching this valuation he eliminated the debt service. Manifestly such an elimination is improper in determining taxable value. The case of *Allen v. Harford Co.*, 74 Md. 294, is controlling on the point. He admitted that if the mortgage could not be disregarded, his figure would be in excess of a million dollars. Moreover, his calculation was unique, in that he capitalized the net income on a "present worth"

basis at an expectancy of only 10 years, and used a vacancy expectancy which disregarded the facts. We cannot find that the Tax Commission erred in declining to accept his valuation, and accepted a figure based on capitalization of gross income, according to the usual formula which takes into account all deductible items including depreciation, but not including mortgage principal and interest. As we have pointed out, the final assessment was below the figure determined by the capitalization method, and far below the actual cost and the true reproduction cost. We cannot find that the assessment included more than the value of the lessee's interest, or that it could be said to include any part of the reversionary or any other interest of the government.

*Order affirmed, with costs.*