45 A.3d 273

**CORDISH POWER PLANT LIMITED PARTNERSHIP, et al.**

v.

**SUPERVISOR OF ASSESSMENTS FOR BALTIMORE CITY.**

No. 114, Sept. Term, 2011.

Court of Appeals of Maryland.

May 23, 2012.

2

Michael A. Stoltz (Cordish & Cordish, Baltimore, MD), on brief, for appellants.

Jeffrey G. Comen, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

BATTAGLIA, J.

We are called upon to determine whether a ground lease [1] owned by the City of Baltimore must be considered in the

---

1. A ground lease "is an instrument creating a long-term leasehold estate.... [T]he tenant pays net rent to the landlord for possession and use of the landlord's land, on which the tenant agrees to construct a building or to make substantial improvements to an existing building."

valuation of an "income producing commercial real property" [2] to which it is attached (for purposes of real property tax valuation), regardless of whether the lease itself has been proven to be restrictive of the use of the property.

Cordish Power Plant Limited Partnership and Cordish Power Plant Number Two, LLC (collectively "Cordish"), Appellants, lease from the City two adjoining pieces of real estate on East Pratt Street in Baltimore City known as the Power Plant Building and the Pier IV Office Building. After the two properties were valued by the Supervisor of Assessments for Baltimore City, Appellee, together at $38,138,600 for real property tax purposes, Cordish challenged the valuations in separate cases before the Property Tax Assessment Appeals Board, which affirmed, and thereafter before the Maryland Tax Court.

In both cases before the Tax Court, Cordish introduced appraisals and testimony that valued the properties at $29,900,000 collectively, based in part on the existence of ground leases owned by the City of Baltimore; the leases, themselves, however, were not introduced into evidence during the proceedings. The Supervisor of Assessments for Baltimore City, Appellee, argued that consideration of the ground leases was contrary to Section 8–113 of the Tax–Property Article, Maryland Code (1985, 2007 Repl.Vol.),[3] which requires,

---

James P. McAndrews, Commercial Real Estate Law Practice Manual with Forms 83 (2d ed.2009).

**2.** One of the statutory sections in issue references the particular phrase, "income producing commercial real property." Section 8–105(a)(1)(ii) of the Tax–Property Article, Maryland Code (1985, 2007 Repl.Vol.). All subsequent statutory references to the Tax–Property Article are to Maryland Code (1985, 2007 Repl.Vol.), unless stated otherwise.

**3.** Section 8–113 of the Tax–Property Article provides:
Interests subject to property tax under § 6–102 of this article shall be valued as if the lessee, person in possession, or user of the property were the owner of the property.
Section 6–102 of the Tax–Property Article provides, in pertinent part, that leasehold interests in government property, provided "with the privilege to use the property in connection with a business that is

as a general rule, that interests subject to property tax under Section 6–102 of that Article be valued as though the lessee were the owner. The Tax Court affirmed the $38,138,600 valuation for the two properties collectively,[4] which was subsequently affirmed upon judicial review by the Circuit Court for Baltimore City.

Cordish appealed and, prior to any proceedings in the Court of Special Appeals, we granted certiorari, 424 Md. 628, 37 A.3d 317 (2012), to address the following question:

> Did the Maryland Tax Court err in its decision to discount the testimony offered by the Appellant because of the Tax Court's reliance on an erroneous understanding of law, offered by the Appellee in its testimony, that Md.Code Ann., Tax–Prop. § 8–113 prohibited the analysis of a ground lease and its affect on a commercial valuation of a property?

We shall hold that the Tax Court did not err in disregarding the effect of the ground leases, because Cordish did not

---

conducted for profit," are subject to taxation as if the lessee was the owner of the property:

(a) *In general.*—Except as otherwise provided in this section, a leasehold or other limited interest in property is not subject to property tax.

* * *

(e) *Interests in government property.*—Unless exempted under § 7–211, § 7–211.1, or § 7–501 of this article, the interest or privilege of a person in property that is owned by the federal government, the State, a county, a municipal corporation, or an agency or instrumentality of the federal government, the State, a county, or a municipal corporation is subject to property tax as though the lessee or the user of the property were the owner of the property, if the property is leased or otherwise made available to that person:

(1) by the federal government, the State, a county, a municipal corporation, or an agency or instrumentality of the federal government, the State, a county, or a municipal corporation; and

(2) with the privilege to use the property in connection with a business that is conducted for profit.

**4.** The Tax Court originally considered Cordish's challenges to the valuations in two separate hearings. The cases were subsequently consolidated in the Tax Court's Memorandum and Order, upon determining that "the issues and factual premises in both appeals are sufficiently analogous to justify considering the appeals together."

establish that the leases in issue restricted its use of the properties.

Commercial real property is valued, for property tax purposes, at its market value. Market value may be established in a myriad of ways, oftentimes depending on the context; three traditional methods are the cost to reproduce the property, comparison of prices of recently-sold comparable properties, and the capitalization of income approach.

Under the cost to reproduce method, market value is the cost to build the same building or improvement on the land on which the property at issue is located. The Appraisal Institute, The Appraisal of Real Estate 335 (11th ed.1996). The cost to reproduce or replace the building is reduced by depreciation and then added to the value of the land itself to arrive at the total appraisal of the entire property. *Id.* at 340–41. Costs of reproduction or replacement of the building may include direct costs of construction, such as material and labor, and indirect costs, such as financing costs. Depreciation of a building represents deterioration, which is caused by its age and condition, as well as its "obsolescence," which includes consideration of its functional adequacy and the market demand for the particular type of building. *Id.* at 341.

Under the sales comparison approach, the value of a commercial property is dependent upon the range of prices of recently-sold properties that are comparable to the property in issue. *Id.* at 397. Comparable properties are of the same or similar nature and, typically, geographical location as the property to be valued. *Id.* at 402. Once identified, comparable properties are juxtaposed with the property in issue to determine whether they differ in legal, financial and physical characteristics "that cause the prices paid for real estate to vary," including: the real property rights conveyed in the sale, market conditions affecting the sale, location, physical qualities, and use or zoning restrictions, among others. *Id.* at 402–04. The prices of the comparable properties are adjusted to account for these differences, in order to insure that the sale

prices of the comparables comport with the characteristics and conditions of the property at issue. *Id.* at 403–04.

Under the capitalization of income approach, income earned from a property is most indicative of its value. *Id.* at 449. Essentially, the value of a property is based upon what income the property is expected to generate on an annual basis, reduced by its operating expenses to yield its net operating income.[5] *Id.* at 454, 515.

Once the net operating income is determined, comparable properties are consulted with respect to their market value as well as their net operating income during the relevant time in issue, in order to determine the capitalization rate or the rate that reflects the anticipated benefits and risk if the property were acquired. *Id.* at 459, 461, 514–15. In lieu of established capitalization rates for other properties, a property valuation based on the income approach may depend upon an assumed capitalization rate for the property in issue reliant upon market surveys of investor expectations.[6] *Id.* at 514 n. 2. The capitalization rate may be upwardly adjusted for the risk of investing in the property in issue, or the likelihood that the property will not produce its anticipated income, as the uncertainty of future income loss is considered to detract from a property's market value. *Id.* at 514–515; *see also id.* at 459 ("To a real estate investor, risk is the chance of incurring a financial loss and the uncertainty of realizing projected future benefits."). Risk is evidenced by "the credit rating of the property's tenants [and] the stability of the property's income

5. In its brief, Cordish cited *Lewnes Family Partnership v. Supervisor of Assessments of Anne Arundel County*, No. 953(1–2), 1996 WL 303641, at *1, 1996 Md. Tax LEXIS 4, at *1–2 (June 5, 1996), in which ground rent payments were deducted as an expense from the income of the lease-encumbered property. *Lewnes* is inapposite because the parties in this case stipulated to the net operating incomes, as determined by an appraiser employed by the Supervisor of Assessments.

6. Market surveys published by PriceWaterhouseCoopers (PwC) and the Real Estate Research Corporation were referenced by the parties' appraisers in this case to arrive at their estimated overall capitalization rates.

stream." *Id.* at 514. Once the capitalization rate is calculated, it is then applied to the property at issue, by dividing it into the net operating income to derive value. *Id.* The higher the capitalization rate, the lower the value. Alfred A. Ring, The Valuation of Real Estate 232 (2d ed.1970).

This last method, the income approach, is the preferred analysis in valuing an income producing commercial real property under Section 8–105(a)(1) of the Tax–Property Article:

(a) *Valuation.*—(1) Except for land that is actively devoted to farm or agricultural use, the supervisor:

(i) may value income producing real property by using the capitalization of income method or any other appropriate method of valuing the real property; and

(ii) shall consider an income method in valuing income producing commercial real property.

That is what the parties used here.

Cordish and the Supervisor of Assessments submitted competing appraisals and testimony to the Tax Court. They stipulated to the net operating income of the properties, as determined by an appraiser employed by the Supervisor of Assessments, who testified that she did not consider the ground lease in reaching her calculation because the ground leases were not provided to her, and, even if they had been provided to her, she was required to value the property in fee simple, i.e. as if the Cordish were the owner. The only dispute, therefore, appeared to be the capitalization rate to be applied to the property.

Cordish, through its appraiser, presented testimony that the existence of the ground leases owned by Baltimore City, and the obligation to pay ground rent, made the property less marketable, raised the risk of investment, and thus required an increase in the overall capitalization rate; the ground leases, though, were not introduced into evidence. Although Cordish's appraiser concluded in both appraisals that, "[a] Leasehold Interest offsets a property's marketability as compared to properties held in fee," he acknowledged on cross-examination that had he valued the property in fee simple, the

capitalization rate would have been lower, resulting in a higher value for the property. His appraisals, however, alluded to the lack of restrictions associated with the property, stating, "We are unaware of any easements or restrictions which would hinder development of the site." Cordish, nevertheless, maintained in its written submissions to the Tax Court that the existence of the ground leases required an increase in the overall capitalization rates and an ultimate decrease in the property's value subject to taxation, "All contracts *burdening* a piece of property affect its marketability ... because contracts that affect a commercial property's ability to make money, affect the Cap–Rate for purposes of valuation." (emphasis added).

In its Memorandum and Order, the Tax Court, after consolidating the two cases, affirmed the Supervisor's higher assessments for the properties and determined that the Cordish appraisals valued the properties as leasehold interests, rather than in fee simple, contrary to Section 8–113 of Tax–Property Article. Valuing them as leasehold interests, the Tax Court found, served as "a meaningful detraction to the properties' values" with which it could not agree, because the court could not "find any evidence upon which it can credibly extrapolate what [Cordish's] valuations might have been if he had valued the properties as being held by the Petitioners in fee simple." Determining that the Cordish appraisals were not reliable, the Tax Court chose to rely upon the appraisals submitted on behalf of the Supervisor of Assessments:

> The Court declines to rely on the analysis presented by [Cordish] because their foundations are at variance with the statutory directive for the properties' valuations and there is no credible foundation by which the Court can cure this defect. In contrast, the Court finds [the appraisals of the Supervisor of Assessments'] analysis both in conformance with the statutory directive and well reasoned. So, the Court is compelled to conclude that the Petitioners have not met the burden of proof necessary to justify a reversal of the [Property Tax Assessment Appeals Board] decisions.

The Circuit Court, thereafter, affirmed the decision of the Tax Court, and Cordish timely appealed.

At the heart of this case is whether a ground lease may be considered in the valuation of a leasehold interest in income producing commercial property. If Cordish is correct, then the existence of a ground lease always would adversely affect the market value of the property. In contrast, if the Supervisor of Assessments is correct, no ground lease may be considered in such a valuation, because of the instruction in Section 8–113 of the Tax–Property Article that the lessee be treated as the owner. Cordish appears to argue that any ground lease constitutes a burden on the use of commercial property, whereas the Supervisor of Assessments ostensibly contends that a ground lease can never be considered as a burden. We conclude, however, that neither Cordish nor the Supervisor of Assessments is correct in its argument.

■ Under Section 6–102(e) of the Tax–Property Article, which is part of Title 6 of the Article, entitled "Taxable Property; Imposition of Tax; Setting Tax Rates," Cordish's leasehold interests in government-owned property, "with the privilege to use the property in connection with a business that is conducted for profit," are subject to taxation, as if Cordish were the owner:

> (e) *Interests in government property.*—Unless exempted under § 7–211, § 7–211.1, or § 7–501 of this article, the interest or privilege of a person in property that is owned by the federal government, the State, a county, a municipal corporation, or an agency or instrumentality of the federal government, the State, a county, or a municipal corporation is subject to property tax as though the lessee or the user of the property were the owner of the property, if the property is leased or otherwise made available to that person:

> (1) by the federal government, the State, a county, a municipal corporation, or an agency or instrumentality of the federal government, the State, a county, or a municipal corporation; and

(2) with the privilege to use the property in connection with a business that is conducted for profit.

Section 8–113 of the Tax–Property Article, entitled "Valuation of interests subject to tax under § 6–102 of this article," similarly provides that the properties be valued as if Cordish were the owner:

Interests subject to property tax under § 6–102 of this article shall be valued as if the lessee, person in possession, or user of the property were the owner of the property.

It is this language of the lessee being the "owner of the property" upon which the Supervisor of Assessments relies in order to ignore the existence of the Baltimore City ground leases.

The language of ownership in Sections 6–102(e) and 8–113, however, is not determinative of the value of the properties, but rather the identification of the taxpayer; in this regard, the lessee is the "hypothetical owner" of the property.

Sections 6–102(e) and 8–113 of the Tax–Property Article were derived from Sections 8(8)(e) and (f) of Article 81, Maryland Code (1957, 1961 Supp.). In 1961, Sections 8(8)(e) and (f) were enacted under the title "What Shall be Taxed and Where," 1961 Maryland Laws, Chapter 884, to establish that leasehold interests in government-owned property could be taxed under certain circumstances and, at the same time, identify the lessee as the taxpayer:

The following property, except in §§ 9 and 10 provided, shall be subject to assessment to the owner and taxation for ordinary taxes in this State and in the county and/or city specified below:

\*　　\*　　\*

(8) *Leaseholds and other limited interests in real or personal property.*—No leasehold or other limited interest in real or tangible personal property shall be subject to taxation except the following which shall be subject to taxation in the same amount and to the same extent as though the

person in possession or the user thereof were the owner of such property.

\* \* \*

(e) The interest or privilege of any lessee, bailee, pledgee, agent, or other person in possession of or using any real or personal property which is owned by the federal or State governments, and which is leased, loaned, or otherwise made available to any person, firm, corporation, association, or other legal entity, with the privilege to use or possess such property in connection with a business conducted for profit ... shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property[.]

\* \* \*

(f) All interests subject to taxation by subparagraphs (a), (b), (c), (d), and (e) above, shall be valued and assessed at the full value of the property to the same extent as though the holders of the interests were the complete and absolute owners of such property.

Maryland Code (1957, 1961 Supp.), Sections 8(8)(e) and (f) of Article 81.

In similar circumstances, where the Legislature has enacted statutes providing that the lessee be subject to taxation in the place of the owner, we have interpreted such a provision to be a function of convenient, efficient tax collection:

The provisions of Section 3(c), Article 81, Code of 1951, providing that the owner of certain limited interests in real and personal property shall be treated as the owner in fee for purposes of taxation, merely allows the person in possession to be taxed on the whole interest, where the whole interest is taxable, for the convenience of the tax authorities.

*Meade Heights, Inc. v. State Tax Commission,* 202 Md. 20, 27–28, 95 A.2d 280, 284 (1953). In *Philadelphia W. & B. R.R. Co. v. Appeal Tax Court,* 50 Md. 397, 411 (1879), we interpreted Section 73 of Article 81, Maryland Code (1860), which

required a tenant "to pay the taxes levied on the demised premises" and then provided the tenant with the "right of action to recover such money of the landlord," as "intended as a means of facilitating the collection of taxes; there being many cases where the landlord might not be known, or might be absent."

 In the present circumstances, hypothetical ownership is attributed to the lessee in order to identify the lessee as the taxpayer for the convenience of the tax collector, as we have noted heretofore interpreting similar provisions. As a result, we conclude that Sections 8–113 and 6–102(e) of the Tax–Property Article, when stating that the lessee of government-owned property is the owner, does so to identify its "hypothetical owner" for tax purposes.

 In concluding this, however, our analysis is not over. We also determine that Cordish is equally incorrect in its argument that all ground leases per se adversely affect value. Per se adverse effect cannot be presumed, however, because, as Cordish conceded at oral argument, ground leases do not always restrict the use of the property.[7]

In bolstering its per se argument by referencing a Tax Court decision, Cordish misses the point that the ground lease, determined to have diminished the income of the prop-

---

7. The Court specifically posed to counsel for Cordish whether a ground lease may be per se restrictive on the value of the property, which counsel denied by stating that ground leases "possibly" contain restrictions:

 THE COURT: If you're basically saying that ground leases per se, whether or not, whatever restrictions they have inside of them, because the questions have revolved around the restrictions. But, your presumption is every ground lease is restrictive? I mean, because you have to say that, if there's nothing in the record about restrictions. I mean, that has to be an essential part of the argument?
 COUNSEL: I think every ground lease is different.
 THE COURT: But they're restrictive from your notion.
 COUNSEL: Possibly. It could be a simple ground lease that transfers ownership with full possessory rights. And ... if the City said "Here's the Power Plant, go have a ball, do whatever you want with it," then that won't impact very much on value.

erty in the case, had been proven to have been restrictive. In *Inner Harbor Marina of Baltimore, Inc. v. Supervisor of Assessments of Baltimore City*, No. 6280, 1991 WL 322991, at *1, 1991 Md. Tax LEXIS 10, at *3 (May 13, 1991), a ground lease owned by the City of Baltimore had been admitted into evidence before the Tax Court, which then determined that it contained "restrictions not ordinarily required of a marina property owner" that negatively impacted the property's income, under the income approach. *Id.* The same proof is not present here.

We have only considered restrictions in leases as demonstrated by the evidence. In *Meade Heights, Inc. v. State Tax Commission*, 202 Md. 20, 95 A.2d 280 (1953), we considered whether restrictions imposed by a lease and submitted into the record diminished the value of the property. Real estate developers leased land from the federal government in order to build and operate residential units on a military base in this State. To finance the construction of the buildings, the lease required the developers to obtain mortgage insurance, which was provided by the federal government on the condition that the developers limit subleasing to military personnel at fixed rents. The developers were assessed the full value of the buildings but they argued that restrictions imposed by the lease diminished their values. We observed, in dicta, that these restrictions could be considered in valuing the buildings, but that they were not shown to cause a "possible diminution in value," as occupancy was at 100% at the time of valuation, and the fixed subrents were "adequate to retire the mortgage and show a handsome profit to the private investor." *Id.* at 30, 95 A.2d at 285. In the future, however, if the demand in occupancy fell, "such a change would naturally be reflected in the subsequent annual assessments." *Id.*

In the present case, the ground leases were not admitted into the record, nor were the alleged restrictions in the leases proven, such as those asserted by Cordish in its brief before us as restrictions "against demolishing one of the buildings, restrictions on signage, restrictions on height, and

many other requirements on maintenance, design, tenanting [sic], and development of the buildings which would not burden a typical downtown building owner."

■ Cordish contends, however, that it is the Supervisor of Assessments who should have entered the provisions of the ground leases into evidence before the Tax Court because the ground leases are recorded in the land records for Baltimore City. We disagree because it is Cordish's burden of proof and persuasion regarding adverse effects on valuation. *See Fairchild Hiller Corp. v. Supervisor of Assessments*, 267 Md. 519, 522–23, 298 A.2d 148, 150 (1973) (concluding that Tax Court reasonably concluded that the sales comparison analysis put forth by the taxpayer did not adequately reflect market value, as the recently-sold properties were not truly comparable, and therefore the taxpayer failed to show error in the real property assessment); *see also Taffet v. Supervisor of Assessments*, No. 712, 1989 WL 38622, at *1, 1989 Md. Tax LEXIS 3, at *2 (Apr. 13, 1989) (rejecting the taxpayers' contention that a rental lease decreased the property value where the only evidence they submitted was the lease itself, stating: "A bold statement that the lease should be considered in value, without further evidence and support, is not sufficient for this Court to determine a value").

In conclusion, we determine that although restrictions imposed by a ground lease may be considered for purposes of valuing commercial income producing properties under Section 8–113 of the Tax–Property Article, Cordish failed to prove that the ground leases in issue contained restrictions negatively affecting their value.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

McDONALD, J., Concurs.

McDONALD, J., concurring.

I agree with the Court's basic analysis and its conclusion that the Circuit Court for Baltimore City should be affirmed.

I write only to observe that, even had the ground leases—with whatever restrictions they contain—been introduced into the record below, that new evidence would not necessarily lead to a different result. The Court's conclusion that lease restrictions may be relevant to the question of value does not necessarily require that they be reflected in a capitalization rate—the point of dispute in this case.